(No. 25005.—

PAUL A. KRAUSE *et al.* Appellants, *vs.* THE PEORIA HOUSING AUTHORITY *et al.* Appellees.

*Opinion filed January 26, 1939.*

358

SHELTON F. McGRATH, and HARRY B. HOFFMAN, for appellants.

FREDERICK V. ARBER, Corporation Counsel, WALTER F. DODD, and WILLARD B. GASKINS, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Appellants, taxpayers of the city of Peoria, seek an injunction restraining the Peoria Housing Authority and the city of Peoria from taking any action under certain contracts. These consist of loan and annual contributions contracts between the Peoria Housing Authority and the United States Housing Authority and a coöperation agreement between the Peoria Housing Authority and the city of Peoria. They were entered into pursuant to the provisions of the Illinois Housing Authorities act (Ill. Rev. Stat. 1937, chap. 67½) and the United States Housing act. (U. S. C. A. title 42, chap. 8.) This injunction suit is brought on the theory that certain provisions of the Illinois Housing Authorities act under which these contracts were entered into are invalid under our State and Federal constitutions.

The purpose of the Illinois Housing Authorities act, as stated in section 2, (Laws of 1938, first sp. sess. p. 33,) is the eradication of slums. It provides: "It is hereby declared as a matter of legislative determination that in order to promote and protect the health, safety, morals and welfare of the public, it is necessary in the public interest to provide for the creation of municipal corporations to be known as housing authorities, and to confer upon and vest in said housing authorities all powers necessary or appropriate in order that they may engage in low-rent housing and slum-clearance projects; and that the powers herein conferred upon the housing authorities, including the power to acquire property, to remove unsanitary or substandard conditions, to construct and operate housing accommodations, to regulate the maintenance of housing projects and to borrow, expend and repay moneys for the purposes herein set forth, are public objects and governmental functions essential to the public interest." This act enables our State and municipalities to take advantage of the provisions of the Federal Housing act extending loans and grants of money to State and local housing authorities under certain .conditions.

Substantially, the act provides that the governing body of any city, village or incorporated town having more than 25,000 inhabitants, or any county, may, by resolution, determine the need for a housing authority. This resolution, with the findings in support thereof, must be considered by the State Housing Board. If the State Housing Board determines that a need exists for such local housing authority it issues a certificate to the presiding officer of such city, village, incorporated town or county providing for the creation of such authority. The housing authority, consisting of five commissioners, is appointed by the presiding officer of the city, village, incorporated town or county with the approval of the State Housing Board. The local authority is authorized, in the furtherance of slum clearance, to ac-

quire and manage property, to issue bonds which are not to be obligations of the city, county, or State, and to exercise the right of eminent domain. The persons entitled to direct benefit in the projects must belong to a designated low-income class. The investment of sinking, insurance, retirement, compensation, pension and trust funds in the bonds of housing authorities is authorized. Provision is made for coöperation between the municipality and the housing authority in vacating streets, zoning the development for residential purposes, lending money, loaning employees, etc.

The financial aid offered by the United States Housing Authority is in the form of loans and annual contributions. The loans are secured by the revenues of the projects and the annual contributions made for such projects by the Federal government. Funds for these loans are made available out of proceeds from the sale of United States Housing Authority bonds which bonds are guaranteed as to principal and interest by the United States government. In addition to such loans, the United States Housing Authority is authorized to contract to pay the local authority annual contributions toward meeting part of the difference between financial charges on the project (including debt requirements) and the income, through rentals which the occupants of the project can afford to pay.

The loan contract provides that the United States Housing Authority shall purchase bonds of the Peoria Housing Authority in the principal amount of $2,559,000, but not to exceed ninety per cent of the actual development cost of the housing project. This contract is conditioned upon the exemption of the project from all State and local taxation, except for certain service charges, and is further conditioned upon the furnishing, to the project and its tenants, of the ordinary municipal services and facilities without cost or charge.

The annual contributions contract between the Peoria Housing Authority and the United States Housing Au-

thority is also conditioned upon a local, annual contribution in the form of a tax exemption, except for certain service charges. It is further conditioned on the execution of a contract between the Peoria Housing Authority and the city of Peoria, obligating the city to eliminate an equal number of unsafe and unsanitary dwelling units. By it the city agrees to furnish the project and its tenants the ordinary municipal services and facilities.

The coöperation agreement between the city and local housing authority obligates the city in accordance with the provisions of the aforesaid annual contributions contract, and requires it to employ its corporation counsel and other officials to assist in condemnation of property to be used in the project. By this contract it is agreed that the city will not levy, impose or charge any tax against the project, but it provides for an annual service charge of five per cent of the shelter rentals of the project for the first ten years, and three per cent thereafter. This charge is to be paid to the city by the Peoria Housing Authority and the money is to be distributed among the several taxing bodies in proportion to their tax rates.

Appellants contend that the General Assembly has not authorized an exemption of the local authorities' property from taxation. Except as to property owned by the national government within the State, the exemption of property from taxation requires affirmative action by the General Assembly. (Constitution of 1870, art. 9, sec. 3; *People* v. *University of Illinois*, 328 Ill. 377; *Glen Oak Cemetery Co.* v. *Board of Appeals*, 358 id. 48.) While it is true that tax-exemption statutes are construed most strongly against the exemption, nevertheless, if a clear intention to exempt certain property appears, it must be given effect. Appellees claim that such clear intention is found in three statutory provisions enacted at a special session of the General Assembly in 1938, and in certain provisions of the Revenue act. Section 29 of the Illinois Housing Authori-

ties act, (Laws of 1938, first sp. sess. p. 38; 67½ S. H. A. 27b;) added by amendment of 1938, reads as follows:

"With respect to any housing project of a housing authority, the housing authority shall, after such project has become occupied, either in whole or in part, file with the proper assessing authority on or before April 1 of each year, a statement of the aggregate shelter rentals of each such project collected during the preceding calendar year; and, unless a different amount has been agreed upon between the housing authority and the city, village, incorporated town or county for which the housing authority was created, five (5) per cent of such aggregate shelter rentals shall be charged and collected as a service charge for the services and facilities to be furnished with respect to such project, in the manner provided by law for the assessment and collection of taxes, and the amount so collected shall be distributed to the several taxing bodies in such proportions that each taxing body will receive therefrom the same proportion as the tax rate of such taxing body bears to the total tax rate that would be levied against the project if it were not exempt from taxation. A city, village, incorporated town or county for which a housing authority has been created may agree with the housing authority, with respect to any housing projects, either separately or jointly or one or more of them, for the payment of a service charge in an amount greater or less than five (5) per cent of the aggregate annual shelter rentals of any project, upon the basis of shelter rentals or upon such other basis as may be agreed upon, but not exceeding the amount which would be payable in taxes thereon were the property not exempt, and, if such an agreement is made, the amount so agreed upon shall be collected and distributed in the manner above provided. Shelter rental shall mean the total rentals of a housing project as such project is defined in the twelfth subsection of section 2 of 'An act for the assessment of property and for the levy and collection of taxes,' approved

March 30, 1872, as amended, exclusive of any charge for utilities and special services such as heat, water, electricity and gas. The records of each housing project shall be open to inspection by the proper assessing officers."

Section 5b of the Housing Coöperation act, (Laws of 1938, first sp. sess. p. 32; 67½ S. H. A. 32b;) added by amendment of 1938, reads as follows: "Any city, village, incorporated town or county for which a housing authority has been created may enter into such agreements with its respective housing authority as are authorized by section 29 of 'An act in relation to housing authorities,' approved March 19, 1934, as amended."

The sixth, seventh and twelfth paragraphs of section 2 of the Revenue act, as amended in 1938, the twelfth paragraph being added by such amendment, (Laws of 1938, first sp. sess., pp. 66, 67, 68,) provides as follows:

"Sec. 2. All property described in this section, to the extent herein limited, shall be exempt from taxation, that is to say:

"Sixth— * * * all property owned by any city or village located within the incorporated limits thereof, * * *

"Seventh—All property of institutions of public charity, * * *

"Twelfth—All land of housing authorities created under 'An act in relation to housing authorities,' approved March 19, 1934, as amended, title to which land has been or shall be acquired from the United States government or any agency or instrumentality thereof, and any buildings or improvements now or subsequently erected thereon, in so far as such land, buildings and improvements are used for low rent housing purposes, or as an incident thereto; but such land, buildings and improvements or portions thereof intended or used for stores or other commercial purposes shall not be exempt from taxation. Nothing herein shall be construed as exempting property of housing authorities or any part thereof from special assessments or special taxa-

tion for local improvements; and nothing herein contained shall be construed as limiting the power of any political subdivision of this State to sell or furnish a housing authority with water, electricity, gas or other services and facilities upon the same basis that such services and facilities may be rendered to others under similar circumstances."

Section 29 of the Housing Authorities act and section 5b of the Housing Coöperation act clearly indicate the intention that there be a general tax exemption of housing authorities, and that service charges shall be paid by them. If section 29 were construed as requiring the payment of a proportion of shelter rentals without tax exemption, this would constitute an additional burden upon housing authorities' property, in violation of the constitution. It is an elementary rule that, if possible, statutes must be so construed as to avoid invalidity. (*People* v. *Wilson Oil Co.* 364 Ill. 406.) Although general exemption of housing-authority property from taxation is not found in the twelfth paragraph of section 2 of the Revenue act, appellees contend that such exemption is created by the sixth and seventh paragraphs of that section. They claim that a housing authority is a public charity and, also, that its property is property owned by a "city or village." However, appellants contend that this construction of section 29 and the sixth and seventh paragraphs of section 2 of the Revenue act is prevented by the twelfth paragraph of section 2 of that act. If the twelfth paragraph of section 2 were construed as exclusive of any other exemptions it would be open to the objection of unconstitutionality on the ground that it embodied an arbitrary classification. On the other hand, if it is regarded merely as a restatement with reference to one group of projects of an existing provision of law exempting all projects, its constitutionality cannot be questioned on the ground of special legislation. As we have said the construction of a statute which renders it constitutional must be adopted if possible. Of course, such a con-

struction will make the exemption feature of the twelfth paragraph of section 2 unnecessary. But it is not unusual to find duplication in legislation, and the duty to construe statutes so that they may be in accordance with our constitution overpowers this minor consideration.

To sustain the decree, appellees contend that a housing authority is an institution of public charity within the provisions of the seventh paragraph of section 2 of the Revenue act. For property to be exempt under that section it must be (1) owned by a charitable organization, and (2) used exclusively for charitable purposes. (*People* v. *Rockford Lodge No. 64, B. P. O. E.* 348 Ill. 528.) There is no fixed rule by which it can be determined whether an organization is a charitable one. Each case must turn on its particular facts. (*People* v. *Thomas Walters Chapter of D. A. R.* 311 Ill. 304.) In *Congregational Publishing Society* v. *Board of Review,* 290 Ill. 108, we said that a charity, in a legal sense, is not confined to mere almsgiving or to the relief of poverty and distress, but has a wider signification and embraces the improvement and happiness of man. A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man. Under the statutes creating the housing authorities no profit may be made from the rentals. (Ill. Rev. Stat. 1937, chap. 67½, pars. 24, 25.) The purpose of the projects is to do away with the menace of slums. While only families of low income receive direct benefit from the projects, all persons in the community will benefit indirectly. It is common knowledge that slum areas create fire hazards, increase the danger of epidemics and promote crime and juvenile delinquency. By lessening these evils all persons in the community are benefited. The Supreme Court of Georgia, in *Williamson* v. *Housing Authority of Augusta,* 199 S. E. (Ga.) 43, (1938), adopted the view that a housing authority is a charitable institution, and sustained a tax ex-

emption under a provision in the constitution of that State exempting public charities from taxation. In *People* v. *Young Men's Christian Ass'n,* 365 Ill. 118, the defendant's charter was one issued while the 1848 constitution was in effect. In holding its personal property exempt from taxation we said: "Upon the state of facts shown by the record it is clear that appellee is a charitable organization engaged in charitable work. Its primary object is charity—not the making of a profit. The rates charged for its rooms are not based, alone, on the cost of the service rendered, but the object of appellee is to furnish wholesome living conditions to young men at a price they can afford to pay and thereby correct the social evils that surround men who would otherwise be compelled to live in cheap rooming houses, amid sordid environments. Appellee had the power to furnish living quarters for young men as it does, and it follows as a matter of course that it could furnish the incidental services necessary to the comfort of the lodgers."

The Peoria Housing Authority is a public charity whose property is to be devoted exclusively to a charitable purpose. For these reasons this tax exemption is valid.

Appellants contend that if the General Assembly has exempted the housing projects from taxation and authorized the acceptance of certain payments for services normally rendered to taxable property, then the vesting of power in any one taxing body to negotiate as to such payment and to bind other taxing bodies constitutes a special privilege, and is special legislation in violation of section 22 of article 4 of the State constitution. It will be noticed that under the provisions of the act giving the cities power to agree as to service charges, it is provided that "the amounts so collected shall be distributed to the several taxing bodies in such proportions that each taxing body will receive therefrom the same proportion as the tax rate of such taxing body bears to the total tax rate that would be levied against the project if it were not exempt from taxation." Thus

no one taxing body is given any preference over any other. The city is made an agent by section 5b of the Housing Coöperation act to contract for all taxing bodies. It would be impossible for each of the taxing bodies to be appointed as agent for the purpose of contracting with the housing authority and hope to carry on the work of such authority efficiently and without discrimination. The city is primarily interested in the housing project and it is entirely reasonable to appoint it as agent to contract for all taxing bodies. Therefore, the contention that this is special legislation cannot be sustained.

Appellants contend that taxes for these several corporate bodies may be levied only by their corporate authorities, (Constitution of 1870, art. 9, secs. 9, 10,) and that the city of Peoria has no power to levy such taxes. But the charge provided here is not a tax, the property being tax exempt.

Several of appellants' remaining contentions involve the question of whether the establishment of housing authorities is for a public purpose. While we have to some extent considered this problem in determining that their purpose is charitable, we deem it advisable to discuss further the public character of these authorities. By section 2 of the Illinois Housing Authorities act, quoted above, the legislature declares the purpose of housing authorities to be the eradication of slums and further declares this purpose to be a public one. It is not the function of this court to pass on the wisdom of the legislature's action. In *Hagler* v. *Small,* 307 Ill. 460, we said: "What is for the public good and what are public purposes are questions which the legislature must in the first instance decide. * * * The power of the State to expend public moneys for public purposes is not to be limited, alone, to the narrow lines of necessity, but the principles of wise statesmanship demand that those things which subserve the general well being of society and the happiness and prosperity of the people shall meet the consideration of the legislative body of the State, though they

ofttimes call for the expenditure of public money. If it can be seen that the purpose sought to be obtained is a public one and contains the elements of public benefit, the question how much benefit is thereby derived by the public is one for the legislature and not the courts."

Cases from other jurisdictions, holding similar housing acts to be for a public purpose, include, *Marvin* v. *Housing Authority of Jacksonville,* 183 So. (Fla.) 145, (1938); *Williamson* v. *Housing Authority of Augusta, supra; Spahn* v. *Stewart,* 268 Ky. 97; *State* v. *Housing Authority of New Orleans,* 182 So. (La.) 725, (1938); *New York Housing Authority* v. *Muller,* 270 N. Y. 333; *Wells* v. *Housing Authority of Wilmington,* 213 N. C. 744; *Dorman* v. *Philadelphia Housing Authority,* 200 Atl. (Pa.) 834, (1938); *McNulty* v. *Owens,* 199 S. E. (S. C.) 425, (1938).

In holding the New York Housing act to be for a public purpose the Court of Appeals, in *New York Housing Authority* v. *Muller, supra,* said: "The public evils, social and economic, of such conditions are unquestioned and unquestionable. Slum areas are the breeding places of disease which take toll not only from denizens, but, by spread, from the inhabitants of the entire city and State. Juvenile delinquency, crime, and immorality are there born, find protection, and flourish. Enormous economic loss results directly from the necessary expenditure of public funds to maintain health and hospital services for afflicted slum dwellers and to war against crime and immorality. Indirectly there is an equally heavy capital loss and a diminishing return in taxes because of the areas blighted by the existence of the slums. Concededly, these are matters of State concern * * * since they vitally affect the health, safety, and welfare of the public."

We are of the opinion that the housing authorities provided for by the Illinois Housing Authorities act are created for a public purpose. This determination disposes of appellants' contentions that slum clearance and low-rent hous-

ing are not a public purpose for the expenditure of public funds or for the purpose of condemnation.

Appellants contend that the bonds to be issued by the Peoria Housing Authority are obligations of the city of Peoria and are subject to section 12 of article 9 of the State constitution. We cannot agree with this contention. By the terms of the Illinois Housing Authorities act, bonds or obligations issued by such an authority are not "payable out of any funds or properties other than those of said authority," and they are explicitly declared not to constitute "an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction." (Ill. Rev. Stat. 1937, chap. 67½, par. 11; 67½ S. H. A. 11.) While the provision that the bonds are not to constitute an indebtedness within the meaning of any constitutional debt limitation is not binding on us, it is clear that the debt here created is not one coming within the constitutional limitation. We have held that obligations which are secured only against the revenues of specific revenue-producing properties are not within the constitutional restrictions on municipal indebtedness. (*Maffit* v. *City of Decatur,* 322 Ill. 82; *Ward* v. *City of Chicago,* 342 id. 167; *Hairgrove* v. *City of Jacksonville,* 366 id. 163.) The case before us is quite similar to *Ward* v. *City of Chicago, supra,* where we held that the issuance by the city of Chicago of certificates of indebtedness to pay for the extension and enlargement of the city's waterworks system did not violate the constitutional provision limiting the indebtedness of a municipality, since the certificates were to be paid solely from the revenues derived from the waterworks system and no property of the city was pledged to secure their payment. The obligation of the city to continue the performance of municipal functions, as provided in its contract with the housing authority, does not constitute the incurring of an indebtedness within the terms of the constitution. Statutory provisions similar to the one here in question have been

upheld in other States as not authorizing obligations of a municipality within the meaning of similar constitutional provisions as to debt limitations. *Dorman* v. *Philadelphia Housing Authority, supra; Marvin* v. *Housing Authority of Jacksonville, supra; Wells* v. *Housing Authority of Wilmington, supra.*

Appellants contend that the limitation of power to create a housing authority to cities having a population of over 25,000, and counties, constitutes an arbitrary classification. Classifications based on population have been upheld whenever there is a reasonable relation between the population and the objects and purposes of the act. (*Mathews* v. *City of Chicago*, 342 Ill. 120.) Admittedly the housing problem is more acute in large communities than in small ones. The provision with reference to counties shows that the legislature considered the slum-clearance problem one that is Statewide. By this provision the need for slum clearance in smaller cities is met. The classification of cities by population has a reasonable relation to the objects sought to be obtained. Neither it, nor the provision as to counties, is arbitrary.

Appellants say that the Illinois Housing Authorities act of 1934, under which the Peoria Housing Authority was created, was unconstitutional in that it delegated to the State Housing Board arbitrary power to create local housing authorities in violation of section 1 of article 4 of our constitution. While the legislature may delegate some discretion to administrative bodies, it must lay down standards to guide its exercise. (*Chicagoland Agencies* v. *Palmer*, 364 Ill. 13.) Assuming that the 1934 act did not prescribe adequate standards, an amendment passed in 1937 (Ill. Rev. Stat. 1937, chap. 67½, par. 3; 67½ S. H. A. 3;) remedies that objection so far as the present statute is concerned. By that amendment it is provided that before issuing a certificate the State Housing Board must find "(a) that unsanitary or unsafe inhabited dwelling accommodations exist

in such city, village, incorporated town or county, or (b) that there is a shortage of safe or sanitary dwelling accommodations in such city, village, incorporated town or county available to persons who lack the amount of income which is necessary (as determined by said Board) to enable them without financial assistance to live in decent, safe and sanitary dwellings without overcrowding." The act then enumerates several factors which the board may take into consideration in determining whether dwelling accommodations are unsafe or unsanitary. This amendment, however, has no effect as to the Peoria Housing Authority which was created under the 1934 act. The objection with respect to that authority is obviated by an act passed in 1937 specifically validating the establishment of housing authorities under the 1934 act. (Ill. Rev. Stat. 1937, chap. 67½, pars. 36, 37.) By such validating act, the legislature itself created the Peoria Housing Authority, thus the objection of improper delegation of legislative authority cannot be made to that act. While the legislature cannot, by a curative act, destroy vested rights or impair the obligations of contracts, (*People* v. *Prather,* 343 Ill. 443,) no such consideration is present here. Prior to the validating act, the Peoria Housing Authority had taken no action other than investigative in character. Appellants had not obtained any vested rights which might be impaired by the retroactive application of the validating legislation. In such case the legislature may, by curative act, validate any proceeding which it had power to authorize in advance. (*People* v. *Madison,* 280 Ill. 96.) The General Assembly had power to create housing authorities by its own act. Such action would not be a violation of section 22 of article 4 of our constitution. That section provides that the General Assembly shall not pass special or local laws in certain enumerated cases, and "in all other cases where a general law can be made applicable, no special law shall be enacted." The legislation here under question does not fall in any of the

enumerated classes. We have held that the clause requiring the enactment of general laws in all cases where such laws are applicable is a matter of legislative discretion, not subject to judicial review. *Herschbach* v. *Kaskaskia Island Sanitary and Levee District,* 265 Ill. 388; *Scherzer* v. *Keller,* 321 id. 324; *Cermak* v. *Emmerson,* 323 id. 561.) Therefore, the Peoria Housing Authority was given a valid legal status.

Appellants' contention that a special privilege is granted to those entitled to housing has already been answered by our determination that the Illinois Housing Authorities act is for a public purpose. The public purpose of the act lies in providing housing to persons of low-income class. Also, as we have said, the entire community will derive some benefit from the slum-clearance projects. All persons who come within the standards are eligible when there is sufficient shelter for them.

The contention that an arbitrary discretion in the choice of tenants is conferred on the local housing authority is without merit. Administrative discretion is not an unconstitutional delegation of the legislative function where, as here, adequate standards to guide the exercise of discretion are provided for by the statute. (*Chicagoland Agencies* v. *Palmer, supra.*) Reasonable standards are set by section 25 of the act. In *Dorman* v. *Philadelphia Housing Authority, supra,* and *Williamson* v. *Housing Authority of Augusta, supra,* it was held that similar statutes did not constitute a delegation of the legislative function.

Section 28 of the Illinois Housing Authorities act which authorizes the investment of certain funds in the bonds of housing authorities is valid. There is no arbitrary discrimination if such authorization is reasonable. The reasonableness lies in the fact that the preference extends only to bonds of projects receiving financial assistance from the Federal government. Pursuant to the United States Housing act, the United States Housing Authority has contracted

to make annual contributions up to three and three-fourths per cent of the actual development cost of the local housing project. The Peoria Housing Authority covenants that these annual contributions will be pledged only as security for the bonds. It is well settled that the General Assembly has the power to classify persons or objects, provided such classification has a reasonable basis. There must be a substantial difference which has a reasonable relation to the classification. (*People* v. *Schenck,* 257 Ill. 384.) The contractual obligation of the United States Housing Authority affords additional security for these bonds beyond what is ordinarily found. This constitutes a reasonable basis for the separate classification of them. The Illinois Housing Authorities act is a separate and complete statute, and although provision is made elsewhere in our statutes with reference to the investment of trust, insurance and other funds, it was not necessary to refer to such other statutory enactments.

We have no Federal restriction upon the city of Peoria. While it, of course, has no authority to bargain away its governmental powers to the national government, it may, as here, voluntarily contract with an agency of the national government within the authority granted it by the State. The agreement of the city commits it only to the performance of governmental functions clearly within its power. *Ashton* v. *Cameron County Water Improvement District,* 298 U. S. 513, and *Arkansas-Missouri Power Co.* v. *City of Kennett,* 78 Fed. (2) 911, cited by appellants, are not in point.

Appellants' final contention is that there is no power to enter into contracts under some of the legislation here in question, as it was not passed until subsequent to July 1, 1938, and contained no emergency clauses. In support of this contention they cite *Dunne* v. *County of Rock Island,* 283 Ill. 628, which held that an act approved June 24, 1915, and effective July 1, 1915, had the effect of invalidating a

contract entered into during the interval. That decision is against appellants' contention. It shows that an act which is approved but not in effect will be given legal force. The law pursuant to which these contracts were entered into is in existence; it is merely its operation which is postponed to a future date. (*People* v. *Inglis,* 161 Ill. 256.) Although no contracts may exempt the project from taxation before the statutes become effective on July 1, 1939, contracts may now be made to become operative on that date.

The decree of the circuit court is affirmed.

*Decree affirmed.*