(No. 28527.—

THE SPRINGFIELD HOUSING AUTHORITY, Appellee, *vs.* M. B. OVERAKER, County Clerk, *et al.,* Appellants.

*Opinion filed May 23, 1945.*

JOHN W. CURREN, State's Attorney, and THOMAS W. HOOPES, both of Springfield, for appellants.

HUGH J. DOBBS, and MONTGOMERY S. WINNING, both of Springfield, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, the Springfield Housing Authority, filed its amended complaint in the circuit court of Sangamon county against the defendants, M. B. Overaker, the county clerk and *ex officio* assessor of Capitol township, and John R. Jones, the county treasurer and *ex officio* collector for the township, to restrain them from extending, collecting, or attempting to collect any taxes levied against the John Hay Homes for the years 1943, 1944, and so long as they remain a low rent housing project under the Housing Authorities Act. (Ill. Rev. Stat. 1943, chap. 67½, par. 1 *et seq.*) Injunction is a proper remedy where a property owner alleges that a tax is levied upon property not subject to taxation. (*City of Mattoon* v. *Graham*, 386 Ill. 180.) Defendants interposed a motion to dismiss the complaint. Their motion was overruled, and a decree was entered finding that plaintiff is a municipal corporation and its property public grounds actually and exclusively used for public and municipal purposes; that it is a public charity and its property actually and exclusively used for charitable and governmental purposes, and not leased or otherwise used with a view to profit, and that it is an incorporated branch and division of the city of Springfield and, hence, an agency and instrumentality of the government of the city, rendering its property the property of the city. For these reasons, plaintiff's property was ad-

judged exempt from the assessment or payment of taxes, and defendants were restrained from extending any taxes for the year 1943 against the property designated as John Hay Homes, situated within the city of Springfield and, also, for the year 1944, or any subsequent year so long as the property shall be and remain a low rent housing project under the Housing Authorities Act. From this decree, the defendants prosecute a direct appeal, the revenue being involved.

From the pleadings it appears that in May, 1939, and continuing thereafter, plaintiff, organized and existing under the Housing Authorities Act, undertook the development of a low rent housing project known as John Hay Homes. In 1940, it acquired real estate which has been at all times since owned, occupied and used as a low rent housing project. At the time of acquisition, there were located on the premises 174 old, dilapidated shacks, unfit for human habitation, but, however, occupied by low-income families as living quarters, many of these families being in indigent circumstances and supported by public charity. Upon the acquisition of the property, plaintiff caused the shacks to be torn down and 599 dwelling units, known as the John Hay Homes, were erected thereon. In addition, plaintiff has opened streets and alleys on the premises and has dedicated them to public use. It has constructed recreation centers, a public sewer system, a street lighting system, a water distribution system, a central heating plant and a transmission system for use in connection with the operation of the project. From a day prior to January 1, 1943, the premises, together with the improvements, have been used and occupied as a low rent housing project. Since the construction of the project, and because of the housing units provided thereby, plaintiff has caused not less than 222 shacks in Springfield, unfit for human habitation, to be torn down, in addition to the 174 which

previously had been located on the premises. Plaintiff's intention is to cause the elimination of other housing units in the city until the total number of unfit housing units eliminated equals the number of units provided in the project. Throughout the entire period of its operation, plaintiff has operated the project in the manner directed by the Housing Authorities Act, and has provided decent, safe and sanitary housing facilities for low income families, at rentals commensurate with their incomes. As a result, the project produces insufficient income to pay the cost of its operation, except for contributions and grants made by the Federal government. Plaintiff alleges that the erection and operation of the homes have eliminated a slum area in Springfield and that, on the other hand, habitable living quarters have been furnished persons whose incomes were otherwise insufficient to provide quarters other than shacks unfit for human habitation and which were a fire hazard, and that the project has eliminated living conditions detrimental to the health of persons living in the slum area and to the general health of the community, and tending to produce immorality, and both adult and juvenile delinquency. These allegations are abundantly supported by affidavits attached to and made a part of the complaint.

Additional facts and circumstances merit mention. The plaintiff entered into an agreement with the city of Springfield by which it agreed to the payment of an annual service charge, based upon the aggregate shelter rents, for the services and facilities to be furnished the project in lieu of taxes, pursuant to section 29 of the Housing Authorities Act, (Ill. Rev. Stat. 1943, chap. 67½, par. 27b,) which provides for the payment of five per cent of the gross shelter rents in lieu of taxes, unless a different amount has been agreed upon between the housing authority and the city, village, incorporated town or county for which

the housing authority was created. Supplementing section 29, section 5b of the Housing Cooperation Law (Ill. Rev. Stat. 1943, chap. 67½, par. 32b,) provides that any city, village, incorporated town or county for which a housing authority has been created may enter into such agreements with its respective housing authority. The board of review of Sangamon county assessed plaintiff's real estate for the year 1943, although it had been omitted in 1940, 1941 and 1942, and had not been assessed by the assessor of Capitol township for 1943. For the year 1939, $4200 was paid as taxes and, for the year 1943, $5648.90 was tendered in lieu of taxes.

Section 3 of article IX of our constitution ordains: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law." Conformably to the authority granted, the General Assembly has exempted from taxation "all property of institutions of public charity, all property of beneficent and charitable organizations, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (Ill. Rev. Stat. 1943, chap. 120, par. 500.) *Krause* v. *Peoria Housing Authority,* 370 Ill. 356, holds that property of a housing authority, organized under the Housing Authorities Act, is entitled to a general exemption from taxation as a public charity under the quoted provisions of the seventh paragraph of section 19 of the Revenue Act of 1939, and that section 29 of the Housing Authorities Act and section 5b of the Housing Cooperation Law manifest the legislative intention of granting a general tax exemption to housing authorities. This court held, further, in the

*Krause case,* that the provisions of section 29 of the Housing Authorities Act and section 5b of the Housing Cooperation Law, making the city disbursing agent for taxing bodies of shelter rentals received and authorizing it to contract for all taxing bodies with the housing authority, neither constitute special legislation nor take from other taxing bodies the power to levy taxes, as the charge collected is not a tax, the property being exempt, and no one taxing body is given any preference over any other. The Springfield Housing Authority, as the Peoria Housing Authority, was organized under the Housing Authorities Act. In the present case, plaintiff acquired the property in controversy in 1940. From a date prior to January 1, 1943, and continuously thereafter, the premises, including the improvements thereon, have been, and are now being, occupied as a low rent housing project, and throughout the entire period of its operation, plaintiff has operated the John Hay Homes in the manner directed by the statute. Upon a factual situation which may differ in minor details from the present one but, for all practical purposes, is directly parallel, the Peoria Housing Authority was held to be a public charity whose property is to be devoted exclusively to a charitable purpose, and its property exempt from taxation. In *Zurn* v. *City of Chicago,* 389 Ill. 114, we reaffirmed our conclusion. Defendants recognize that the same question was presented for our consideration in the *Krause case* but submit "the court was in error therein," and, again, in their reply brief declare: "An examination of the provisions of the Housing Authority Act will show that this Court was in error in its holding in the *Krause case.*" Their argument to the effect that plaintiff's project is not a public charity is, in short, an invitation to overrule our decision in *Krause* v. *Peoria Housing Authority,* 370 Ill. 356. This, we decline to do.

The additional argument is advanced, however, that the present project is "leased or otherwise used with a view

to profit." Plaintiff's property itself is employed for an exempt purpose, and all income or revenue received is devoted to the basic purpose of the dwellings. The Springfield Housing Authority does not lose its charitable character and consequent exemption from taxation merely because the enterprise yields income, where, as here, the gross income and the entire property are used directly and exclusively for charitable purposes. In short, its homes are not leased or used primarily to produce revenue or with a view to profit, within the contemplation of the applicable statute. (*People ex rel. Goodman* v. *University of Illinois Foundation*, 388 Ill. 363; *People ex rel. Hellyer* v. *Morton*, 373 Ill. 72; *People* v. *Young Men's Christian Ass'n*, 365 Ill. 118.) Our conclusion is fortified by decisions from other jurisdictions where the same question has been presented for decision. (*Hogue* v. *Housing Authority of North Little Rock*, 144 S. W. 2d (Ark.) 54; *Benjamin* v. *Housing Authority of Darlington County*, 198 S. C. 79, 15 S. E. 2d 737; *Mumpower* v. *Housing Authority of City of Bristol*, 176 Va. 426, 11 S. E. 2d 732; *State of Florida ex rel. Harper* v. *McDavid*, 145 Fla. 605, 200 So. 100.) Holding a housing authority was properly exempt from taxation as a "purely public charity" within the meaning of a constitutional provision that "the general assembly may, by law, exempt from taxation * * * all institutions of purely public charity," even though rent was to be charged for the use of its property, the Supreme Court of Georgia, in *Williamson* v. *Housing Authority of Augusta*, 186 Ga. 673, said, " 'No matter to whom the institutions belong, whether to a private individual, to a corporation, or to an unincorporated company or association, they are equally exempt, provided they are dedicated to charity and used exclusively as institutions of purely public charity, * * *. In a somewhat analogous case in Massachusetts, dealing with the question whether or not a corporation organized to provide a home for working girls was a charitable institution,

the court said: 'Though not paupers, they are so poor as to make it a work of charity to provide for them a home. The individuals of the class change from day to day. They are sufficiently numerous, and so a part of the public, and so connected with it and with the public welfare, as to give to the work of providing a home for any individuals comprised in the class that quality of indefiniteness in the persons helped, which, with the charitable purpose aimed at, makes a public charity in the legal sense.' (*Franklin Square House* v. *Boston,* 188 Mass. 409 (74 N. E. 675).) We are of the opinion that the exemption from taxation contended for can be sustained on the general ground that the project is a purely public charity within the meaning of the constitutional provision, even if it were not public property. The fact that a small amount of rent is to be charged does not change its character."

Defendants' argument, in large part, concerns the wisdom of granting tax exemption to housing authorities. This argument must be addressed to the General Assembly and not to the courts. We have decided that section 29 of the Housing Authorities Act and section 5b of the Housing Cooperation Law reflect a clear legislative intent to grant a general tax exemption of housing authorities and that service charges shall be paid by them, and that these sections square with constitutional safeguards. (*Krause* v. *Peoria Housing Authority,* 370 Ill. 356.) It is wholly immaterial whether this court and its members agree with the social and economic philosophy upon which these provisions are based. The function of determining the public policy which they declare is legislative, and not judicial.

Our conclusion that plaintiff is a public charity and its property exempt from taxation because used and devoted exclusively to charitable purposes, and not leased or otherwise used with a view to profit, renders unnecessary a consideration of the remaining contentions of defendants (1) that plaintiff is not a municipal corporation and its low

rent housing project not exempt from taxation under section 29 of the Housing Authorities Act and section 5b of the Housing Cooperation Act, and (2) that plaintiff is not a low rent housing project owned and operated by a municipal corporation within the contemplation of paragraph 9 of section 19 of the Revenue Law.

Defendants' final contention is that section 29 of the Housing Authorities Act requires plaintiff to pay a reasonable equivalent in lieu of taxes and, further, that the General Assembly cannot commute local taxes without exacting a reasonable service charge. They argue that the General Assembly cannot declare a nominal sum to be a reasonable equivalent, "for this amounts to a release of local taxes without any equivalent," and that the amount of $5648.90 tendered as payment in lieu of taxes for the year 1943 is not, as a matter of law, a reasonable equivalent. A commutation of taxes is not an exemption, but is, instead, merely a substituted method for computing taxes. (2 Cooley on Taxes (4th ed.) sec. 652; *State* v. *Illinois Central Railroad Co.* 246 Ill. 188; *People ex rel.* v. *Barger,* 62 Ill. 452; *Illinois Central Railroad Co.* v. *County of Mc-Lean,* 17 Ill. 291.) Since plaintiff's low rent housing project, which it owns and operates, is exempt from taxation, it is beside the point whether the service charge prescribed by section 29 of the Housing Authorities Act is, or is not, a reasonable equivalent for taxes on the property. As pointedly observed in the *Krause case,* "But the charge provided here is not a tax, the property being tax exempt." The rule invoked with respect to the commutation of taxes is inapplicable.

Upon the authority of *Krause* v. *Peoria Housing Authority,* 370 Ill. 356, and for the reasons assigned in this opinion, the decree of the circuit court is affirmed.

*Decree affirmed.*