THOMAS J. McLAUGHLIN, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFF
AND APPELLANT, *v.* THE HOUSING AUTHORITY
OF THE CITY OF LAS VEGAS AND THE CITY
OF LAS VEGAS, NEVADA, DEFENDANTS AND
RESPONDENTS.

No. 3642

January 31, 1951.                                   227 P.2d 206.

*Bryan & Cory,* of Las Vegas, for Appellant.

*Earl & Earl* and *Howard W. Cannon,* all of Las Vegas,
for Respondents.

## OPINION

By the Court, BADT, C. J.:

This appeal presents for our determination the constitutionality of the housing authorities law. Nev.Stats. 1947, chap. 253, p. 782, being secs. 5470.01 to 5470.25, N.C.L.Supp.1943–1949. Plaintiff, as a citizen, resident, taxpayer and owner of real estate in the city of Las Vegas, Clark County, Nevada, brought the action on behalf of himself and all others similarly situated, alleging that the housing authority of the city of Las Vegas

and the city of Las Vegas were about to proceed with a program for the construction of 100 dwelling units involving the borrowing of $900,000 to be secured by pledge of the revenues derived from operating the project, etc., and to be repaid with the proceeds of sale of self-liquidating bonds. Plaintiff alleged that in a number of respects the act was in contravention of provisions of the state and federal constitutions. Issues were joined by the answer of the defendants, and the district court thereafter rendered judgment dismissing the proceedings. No matters of fact are in dispute, and the issues of law are clearly drawn. The pleadings of the parties are tantamount to an agreed statement of facts. From them it appears that the public housing administration, a federally owned corporation, is empowered under the United States housing act of 1937, as amended, 42 U.S.C.A., secs. 1401–1430, to assist financially local public housing authorities in the development and operation of low-rent housing and slum clearance projects. Negotiations were had by the housing authority of Las Vegas with the public housing administration under the provisions of the federal and state housing acts, and these negotiations had at the time of the commencement of the action been developed to a point whereunder the local housing authority had entered into what was termed a cooperation agreement with the city, had likewise signed a preliminary loan agreement with and a preliminary note to the public housing administration and had obtained the approval of that administration for the construction of 100 dwelling units for a low-rent and slum clearance project in the city. Plaintiffs do not attack the validity of the creation of the Las Vegas housing authority by the state housing authorities law and the resolution of the board of city commissioners. The pleadings contain a detailed description of the project, which we do not find it necessary to follow.

Begun in 1937, activities and operations under the federal act have included the construction of several

hundred thousand low-rent dwelling units in many communities in the United States. By the amendment of 1949, 81st Congress, public law 171, federal financial aid for the construction of an additional 810,000 units was authorized. The Las Vegas program was a part of such authorization. Under the terms of the federal act it was necessary for the several states to enact legislation to set up the proper machinery to enable cities and towns to take advantage of the program.

The provisions of the Nevada housing authorities law are in the main similar to those enacted in between 30 and 40 other states in the Union. All have for their general purpose the promotion of low-rent housing or slum clearance. The title of the Nevada act contains a general recital of its purposes as being: "An Act to provide for the creation of housing authorities, providing for the appointment of commissioners of said authority, defining the power of the authority, providing for the removal of commissioners, prescribing regulations with respect to rentals and tenant admissions, authorizing the authority to issue bonds and prescribing the manner of payment therefor, exempting certain property from execution sale, authorizing the authority to borrow money or accept contributions from the federal government, and other matters relating thereto." The preamble recites the acute shortage of housing for veterans and other persons of low income, the overcrowding in urban and rural areas, the shortage of safe and sanitary dwelling accommodations available at affordable rents, the resulting increase in and spread of diseases and crime, with their menace to health, safety, morals and the public welfare, the necessity for improvement, the inability of obtaining relief without governmental assistance, etc. Sections 1 and 2 of the act are devoted to definitions of the terms used. Section 3 creates in each city "a public body corporate and politic" to be known as the "housing authority" thereof. "Such housing authority is hereby created a public body corporate for

municipal purposes and shall be a municipal corporation." The section provides for the adoption of certain resolutions by the city governing board, reciting certain conditions within the city, etc. Section 7 emphasizes this: "An authority shall constitute a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this act * * *." This is followed by subsections (a) to (f), inclusive, defining in detail the powers deemed to be included in the grant. These include broad powers for the acquisition of property, the construction and renting of dwellings, borrowing of money, etc.

Section 8 declares it to be the policy of the state that the authority operate its projects in an efficient manner so as to fix rentals "at low rates consistent with its providing decent, safe and sanitary dwelling accommodations for persons of low income," sufficient only to maintain the project, to pay the interest and principal on its bonds, to create a necessary reserve to pay its administrative expenses and "to make such payments in lieu of taxes as it determines are consistent with the maintenance of the low-rent character of the housing projects." Section 9 requires the authority to lease the dwelling accommodations only to veterans and other persons of low income, with preference to veterans and servicemen and families of deceased persons who served in the armed forces, at rentals within the financial reach of such persons. Further rules with respect to the intended lessees and the accommodations to be furnished and the rentals to be charged are laid down. Section 11 reads as follows: "An authority shall agree to make such payments in lieu of taxes to the city, town, county, and the state, or any political subdivision thereof, as it finds consistent with the maintenance of the low-rent character of housing projects or the achievement of the purposes of this act." Section 12 authorizes the issuance

of bonds for any of the corporate purposes of the authority. It then provides: "Neither the commissioners of an authority nor any person executing the bonds shall be liable personally on the bonds by reason of the issuance thereof. The bonds and other obligations of an authority (and such bonds and obligations shall so state on their face) shall not be a debt of the city, the county, the state, or any political subdivision thereof, and neither the city, the county, the state, nor any political subdivision thereof shall be liable thereon, nor in any event shall such bonds or obligations be payable out of any funds or properties other than those of said authority. The bonds shall not constitute an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction." Sections 13 and 14 are devoted to provisions concerning the nature of the bonds, and the powers, duties and obligations of the sundry parties. The rights of the obligees are further defined in section 15. Section 19 authorizes any state public body (in this case, the city of Las Vegas) to aid and cooperate in the project by conveying and dedicating property, causing parks, playgrounds, recreational, community, educational, water, sewer and drainage facilities, etc., to be furnished, installing streets, causing services to be furnished "of the character which such state public body is otherwise empowered to furnish," enter into agreements relating to the repair, closing or demolition of unsafe, insanitary or unfit buildings, purchase the bonds of the housing authority, incur the entire expense of public improvements and enter into broad agreements with the housing authority.

Section 20 authorizes the authority to borrow money and to accept grants, contributions and other financial assistance of the federal government. Section 21 confers certain additional powers and provides certain limitations as to rentals. Other sections of the act and other provisions of the sections described do not require further amplification at this time.

The plaintiff contends that the provisions of the state constitution are contravened by the act in numerous particulars. Several of these particulars, and possibly the most important ones, turn upon the question of whether the legislation is for a public use or purpose. Our burden on all points raised is materially lightened by the consideration given by the courts of last resort of over half the states in the Union to attacks upon their statutes almost identical with those here made on the Nevada statute. There exist some differences in the sundry statutes under construction in such courts, and naturally the constitutional provisions of the other states are not in all respects identical with our own. However, both the statutes involved and the constitutional provisions in question in those cases are so closely analogous to the situation here presented and the holdings are so nearly unanimous that we cannot do otherwise than to consider them controlling. Such being the case, no purpose can be served by reconsidering and rearguing the conflicting purposes presented to us, even though the case is of first impression in this state.

(1) It is first contended by appellant that the housing authority of the city of Las Vegas is not a municipal corporation created for a municipal or governmental purpose; (a) that its activities will deprive appellant of property without due process; (b) that its intended exercise of the right of eminent domain will not be for a public use and purpose; and (c) that its property is not exempt from taxation. Article VIII, section 2 of the constitution, N.C.L.1929, sec. 132, provides for the taxation of all property "provided, that the property of corporations formed for municipal * * * purposes may be exempted by law." Article X, section 1, N.C.L., sec. 145, provides for uniform taxation, "excepting such property as may be exempted by law for municipal * * * purposes." Section 6418, N.C.L., provides that all property of every kind and nature whatsoever, within

this state, shall be subject to taxation except: "First—All lands and other property owned by the state, or by the United States, or by any county, incorporated farm bureau, municipal corporation," and certain other entities.

Appellant, conceding that the housing authorities law creates respondent as a public body corporate for municipal purposes and a municipal corporation, contends that it does not follow that the proposed project is a public use; that housing has no peculiar character; that the rights and interest of the public are not involved; that the housing authority is accountable only to itself; that it intends to take taxable property from the tax rolls and that only a select group of individuals will be benefited; that the project has no connection with the health, public safety, public morals or public welfare; that the project is virtually one of private enterprise; that it will involve no public use; etc.

It definitely appears that, although certain additional points must be considered, virtually all of the points of attack upon the statute "inevitably turn upon the question as to whether or not the ultimate result sought constitutes a public use or purpose." Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651, 654. The issue of fundamental importance "upon the determination of which several of the lesser and incidental issues will turn, is whether slum clearance and public housing projects for low-income families are public uses and purposes for which public money may be expended and private property acquired." Housing Authority of County of Los Angeles v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794, 801.

The provisions of the state act, in definite and positive terms, create the housing authority as a public body, corporate and politic and as a municipal corporation for municipal purposes, exercising public and essential governmental functions. Appellant insists, however, that it does not follow that the functions authorized are

of a municipal, public or governmental nature and that the declarations contained in the statute are not binding upon the courts. This may indeed be true, but the question of whether the act is for a public purpose is primarily one for the legislature, and this court will not interfere with the legislative finding unless the determination of that body is clearly wrong. McNulty v. Owens, 188 S.C. 377, 199 S.E. 425. It has often been said that the declaration of policy by the legislature, though not necessarily binding or conclusive upon the courts, is entitled to great weight, and that it is neither the duty nor prerogative of the courts to interfere in such legislative finding unless it clearly appears to be erroneous and without reasonable foundation. Levy Leasing Co. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595; Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; New York City Housing Authority v. Muller, 270 N.Y. 333, 1 N.E.2d 153, 105 A.L.R. 905. The conclusion in the Dockweiler case, supra, was that the California housing authorities law for the purpose of slum clearance and erection of low cost housing projects represented "the exercise of a proper governmental function for a valid public purpose."

The cases are virtually unanimous as to the public, municipal, governmental nature of the housing authority created by the act and as to the public purpose which is its objective. The point need not be labored further. This being so, we must reject the contention of appellant that the exemption from taxation of the property of the housing authority and the right of eminent domain vested in the housing authority contravene any constitutional limitations contained in either the state or the federal constitution. For a resumé of these contentions and their virtually unanimous rejection by the courts, see Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656, and Humphrey v. City of Phoenix, 55 Ariz. 374, 102 P.2d 82. It also disposes of the contention

that the housing activities of the housing authority deprive plaintiff of his property without due process. See Schrader v. Third Judicial District Court, 58 Nev. 188, 73 P.2d 493.

(2) It is next asserted that the revenue bonds authorized by the act to be issued by the housing authority to finance the project will be a financial burden upon the city and a charge upon its tax funds, in violation of article VIII, section 10 of the constitution, N.C.L., sec. 140, which provides that no municipal corporation may loan its credit in aid of any joint stock company, corporation or association, with certain exceptions not here applicable. As noted, the act itself specifies that the city shall not be liable on the bonds of the authority and that such bonds or obligations shall not be payable out of any funds or properties other than those of the authority. That the contention made is not well taken is definitely settled in Housing Authority of the County of Los Angeles v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794, and the many cases therein cited.

(3) It is next contended that the provisions of the cooperation agreement between the authority and the city wherein the authority agrees to pay the city a portion of the shelter rents of the project in lieu of taxes contravene article X, section 1 of the constitution, being N.C.L., sec. 145, requiring a uniform and equal rate of assessment and taxation. The term "in lieu of taxes" would appear to be unfortunately used. A similar term was stricken from the original draft of the Boulder Dam revenue bill considered by us in Clark County v. State of Nevada, 65 Nev. 490, 199 P.2d 137, because of the United States attorney general's opinion that it might imply that the Boulder Dam property belonging to the United States, was otherwise subject to taxation. The contention growing out of the use of this term, however, was specifically rejected (somewhat summarily perhaps)

in Humphrey v. City of Phoenix, 55 Ariz. 374, 102 P.2d 82, 87, citing McNulty v. Owens, 188 S.C. 377, 199 S.E. 425, after referring to the obligation of the city to furnish municipal services to the authority, by the statement: "A municipal corporation is so obligated and this provision in the contract is merely an acknowledgment of the existing law on this point. Since the property is for a public purpose and totally exempt from taxation under the provisions of the statute, the City and Housing Authority may agree on a payment in lieu of taxes, and it is within the power of the City of Columbia to agree to such payment." A like contention was rejected in Edwards v. Housing Authority of the City of Muncie, 215 Ind. 330, 19 N.E.2d 741, 746, by the following statement: "It is as though a civil city agreed with the school city to furnish police, fire, and sanitary services in school or playground territory, or agreed with a park board to furnish such services in connection with public parks. No reason is seen why it may not be done if the Legislature authorizes it as it has done here; and no authority to the contrary is called to our attention." Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N.E.2d 193, 200, disposed of the contention by saying that the charge provided "is not a tax, the property being tax exempt."

(4) It is further contended that the provisions in the cooperation agreement entered into between the authority and the city providing that the latter will eliminate by demolition, condemnation, etc., unsafe and unsanitary dwelling units in the city not less in number than the number of newly constructed dwelling units contemplated, unlawfully bind future members of the board of city commissioners on a matter which is of legislative and discretionary nature. This was disposed of in McNulty v. Owens, supra, by the statement that such covenant on the part of the city constitutes merely an agreement of the city to exercise a power it already has

in such a manner as "to cooperate in the use of those functions and as such is valid." [188 S.C. 377, 199 S.E. 431.] See also Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656.

(5) Appellant contends that the power vested by the act in the Housing Authority is an unconstitutional delegation of legislative power. He states that there is no guide or standard or limitation as to the rentals which may be fixed by the local authority and that in other respects it is authorized in effect to legislate. We have not felt it necessary to recite in detail the provisions of the housing act or the provisions of the cooperation agreement. They have, however, been carefully examined and we are satisfied that the standards and limitations set forth are ample to meet this attack, and that the contention is without merit. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; State ex rel. Ginocchio v. Shaughnessy, 47 Nev. 129, 217 P. 581; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N.E.2d 193; Housing Authority of the County of Los Angeles v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794.

(6) It is next contended that the statute affords special privileges to certain individuals and denies to plaintiff equal protection of the law in contravention of the fourteenth amendment to the Constitution of the United States. It was held, however, in Housing Authority of the City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053, that in the Texas act, similar to our own, the legislature had made a reasonable classification of the members of the public and has provided that such low-rent dwelling accommodations shall be available to all members of the public who presently or in the future fall within the classification made by the legislature. In Housing Authority v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794, 806, the Supreme Court of California, through Mr. Justice Shenk, said that a similar

classification "is neither arbitrary nor unreasonable. On the contrary, it is logical and natural." It also quoted at length from the opinion in Williamson v. Housing Authority of Augusta, 186 Ga. 673, 199 S.E. 43, 47, which discussed the contention at length and definitely held that the classification "is no violation of the constitutional guaranty." The California case also cites to like effect Rutherford v. Great Falls, Spahn v. Stewart, and other cases already cited in this opinion.

(7) It is next contended that while the 1949 amendment to the federal act requires preference to be given to displaced persons, veterans and servicemen of World Wars I and II in admitting families to the project, the state act requires preference to be given to such veterans only of World War II. The point is merely stated. The allegation made in the complaint is that the preference will be given to veterans of World Wars I and II in accordance with the federal act, which will be beyond the authority granted by the state act, and the answer admits that such preference will be given, but denies that the same is beyond the authority granted by the state act. This question was not properly before the district court and is not properly before us upon this test of the constitutionality of the state act. This is a taxpayer's suit. It is not a suit by a veteran of World War I or World War II. Neither the plaintiff nor others similarly situated will be adversely affected by the situation. Plaintiff is "not in position to complain." Norman v. City of Las Vegas, 64 Nev. 38, 177 P.2d 442, 444.

(8) It is next contended that the housing authorities law is unconstitutional because in violation of article IV, section 17 of the Constitution, N.C.L. sec. 68, in that it embraces more than one subject not expressed in the title. The title of the housing act is quoted in full at the beginning of this opinion. In State v. Lincoln County Power District, 60 Nev. 401, 111 P.2d 528, 530, this court

summarily dismissed such contention by reference to a number of instances in which this court had considered such attack upon the title and saw "no reason to review the authorities cited in those cases, or restate the conclusions reached therein," and was simply "content to say that upon the reasoning and authority of those cases" it held the title to the Nevada power district law not constitutionally defective. To the cases there cited we may add Ex parte Ah Pah, 34 Nev. 283, 119 P. 770, and In re Calvo, 50 Nev. 125, 253 P. 671. The contention made is without merit.

The briefs filed are voluminous. Cases are cited from 30 different jurisdictions. Incidental and additional points are discussed, involving sections of the federal act, sections of the state act and covenants of the cooperation agreement which we have not found it necessary to outline. Plaintiff's complaint for an injunction was based upon the sole ground that the defendants were about to proceed with the housing project under the provisions of an act which contravened state and federal constitutional provisions. The district court, in dismissing the action and entering judgment in favor of the defendants, found in effect that none of the attacks upon the constitutionality of the act was supported in law. We have carefully examined the state housing authorities act section by section and it is our conclusion, based upon the authorities herein referred to, that in no respect does any part of such act violate or contravene any provision of the Constitution of the State of Nevada or of the United States. The judgment is affirmed.

EATHER and MERRILL, JJ., concur.