MARLETTE LAKE COMPANY, A NEVADA CORPORATION, PETITIONER, v. GRANT SAWYER, GOVERNOR OF THE STATE OF NEVADA, JOHN KOONTZ, SECRETARY OF THE STATE OF NEVADA, AND MICHAEL MIRABELLI, TREASURER OF THE STATE OF NEVADA, MEMBERS OF AND CONSTITUTING THE STATE BOND COMMISSION OF THE STATE OF NEVADA, RESPONDENTS.

No. 4647

July 3, 1963

383 P.2d 369

*Bible, McDonald & Carano,* of Reno, for Petitioner.

*Harvey Dickerson,* Attorney General, State of Nevada, and *D. W. Priest,* Chief Assistant Attorney General, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Marlette Lake Company seeks a writ of mandate to compel the State Bond Commission to issue $1,650,000 of the state's negotiable, coupon, general obligation bonds as required by Stats. Nev. 1963, ch. 462, § 3, subsec. 3.[1] The statutory conditions precedent to the issuance of said bonds have been met. Therefore Marlette contends that mandamus will lie to compel the commission to perform an act which the law especially

---

[1] The subsection reads, "Upon the execution of the contract herein authorized, the state land register shall deliver a copy thereof to the state bond commission hereinafter created and thereafter it shall be the mandatory duty of such commission to issue the bonds on behalf of the State of Nevada and deliver the same to Marlette Lake Company."

enjoins as a duty resulting from office. NRS 34.160; Cauble v. Beemer, 64 Nev. 77, 177 P.2d 677. The choice of remedy is not disputed. However, the commission does urge that the proposed bond issue is not constitutionally permissible.

The first paragraph of Nev. Const. art. 9, § 3, provides that public debts contracted by the state "shall never, in the aggregate, exclusive of interest, exceed the sum of one percent of the assessed valuation of the state * * *." The people of Nevada at the 1934 general election approved and ratified the legislature's proposal that there be added to Nev. Const. art. 9, § 3, a second paragraph reading, "The state, notwithstanding the foregoing limitations, may, pursuant to the authority of the legislature, make and enter into any and all contracts necessary, expedient or advisable for the protection and preservation of any of its property or natural resources, or for the purposes of obtaining the benefits thereof, however arising and whether arising by or through any undertaking or project of the United States or by or through any treaty or compact between the states, or otherwise. The legislature may from time to time make such appropriations as may be necessary to carry out the obligations of the state under such contracts, and shall levy such tax as may be necessary to pay the same or carry them into effect."

As the aggregate of the public debts already contracted by the state, together with those authorized by the 1963 legislature to be contracted, including the contemplated Marlette bond issue, would exceed the sum of one percent of the assessed valuation of the state, the 1963 legislature in enacting Stats. Nev. 1963, ch. 462, expressly declared: "Sec. 2. After considered judgment and consideration of the provisions of and the authority contained in the second paragraph of section 3 of article 9 of the constitution of the State of Nevada, the legislature finds and declares that the acceptance by the State of Nevada of the offer of Marlette Lake Company to sell the property described in section 1 to the state is both expedient and advisable for the protection and preservation of the natural resources of the

State of Nevada and for the purposes of obtaining and continuing the benefits thereof now and in future years for the state and its citizens. Subject to the conditions hereinafter contained, the execution of a contract by the State of Nevada with Marlette Lake Company is hereby expressly authorized for the purchase by the state of the property described in section 1, payment therefor by the state to be made by the issuance of the state's negotiable, coupon, general obligation bonds in the principal amount of $1,650,000 *pursuant to the authority contained in the second paragraph of section 3 of article 9 of the constitution of the State of Nevada and notwithstanding the limitation of indebtedness imposed by the first paragraph of section 3 of article 9 of the constitution of the State of Nevada."* [Emphasis added.] We must, therefore, decide whether the proposed state purchase of the Marlette properties as authorized by Stats. Nev. 1963, ch. 462, is constitutionally permissible within the second paragraph of Nev. Const. art. 9, § 3.

The contemplated sale by Marlette and purchase by the state embraces, inter alia, the former's water rights, approximately 5,377.91 acres of land, easements, pipelines, flumes, and such other fixtures and appurtenances as are used in connection with the collection, transmission and storage of water by Marlette in Washoe, Ormsby and Storey counties, Nevada. The water distribution system of Marlette presently supplies water for the domestic, industrial, commercial, municipal and state purposes to the general area comprising Virginia City, Gold Hill, Silver City and Carson City. The second paragraph of Nev. Const. art. 9, § 3, specifically authorizes the legislature to contract public debts in excess of the one percent aggregate debt ceiling if, (a) necessary, (b) expedient, or (c) advisable for any one or all of the following purposes: the protection and preservation of its property; the protection and preservation of its natural resources; the obtaining of the benefits of its property; the obtaining of the benefits of its natural resources.

The legislative determination (Stats. Nev. 1963, ch. 462, § 2) that it is expedient and advisable for the state to purchase the Marlette properties in order to protect and preserve natural resources, is one properly within its province to make (cf. Urban Renewal Agency v. Iacometti, 79 Nev. 113, 379 P.2d 466; Berman v. Parker, 348 U. S. 26, 75 S.Ct. 98, 99 L.Ed. 27) and is not here questioned. However, the proposed purchase is attacked upon the premise that the second paragraph of art. 9, § 3, is limited in scope to the protection and preservation of state owned property, and does not authorize a public debt to be contracted for the purchase of properties in private ownership. It is urged that the use of the word "its" in the phrase "necessary, expedient or advisable for the protection and preservation of any of its property or natural resources" demands such a conclusion. We do not agree. The term "its" has a geographical rather than a proprietary connotation. Accordingly the second paragraph of Nev. Const. art. 9, § 3, enables the legislature (without regard to the debt ceiling established by the first paragraph thereof) to enter into any contract (with the United States, another state, or with anyone having the capacity to contract[2]) which the legislature deems necessary, expedient or advisable for the purpose of securing the benefits of or protecting and preserving property or natural resources located within the geographical limits of Nevada.

Therefore we conclude that:

1. Stats. Nev. 1963, ch. 462, is constitutionally permissible within the second paragraph of Nev. Const. art. 9, § 3.

2. The "Agreement for Purchase of Property of Marlette Lake Company" made June 12, 1963, between Marlette Lake Company and the State of Nevada, in accordance with Stats. Nev. 1963, ch. 462, is valid.

---

[2]Such we deem to be the meaning of the phrase of the second paragraph, "however arising and whether arising by or through any undertaking or project of the United States or by or through any treaty or compact between the states, or otherwise."

3. The State Bond Commission has a mandatory duty to issue $1,650,000 of the state's negotiable, coupon, general obligation bonds to Marlette Lake Company in the form and manner designated by Stats. Nev. 1963, ch. 462; and a peremptory writ of mandate compelling the said commission to perform its duty shall issue.

McNAMEE, J., concurs.

BADT, C. J., concurring:

I concur in the result, but for a different reason. Putting aside for a moment the needs of Virginia City,[1] Silver City, and Gold Hill, it is a matter of common knowledge that within the past several years the State of Nevada has been compelled to buy water from Marlette to serve the State Capitol, the State Prison, the Capitol grounds and other buildings owned by the state essential to the use of its public officers and various commissions, departments, agencies, and employees. This occurred at times when Carson Water Co., the public utility supplying Carson City, was curtailing and regulating the use of water by the citizens of Carson City (including hundreds of state employees who by reason of their employment had their residences in the city) by prescribing the hours of the day and the days of the week during which lawns, trees, and gardens might be irrigated. Without thus supplementing the city's regular water system with water purchased from Marlette, the state's historic Capitol and its beautiful Capitol square,[2] with its age-old pines, firs, and cedars (not to mention American elms, Norwegian and sugar maple, and English linden) would have suffered greatly, and possibly have been lost. With the Marlette property on the market for sale (and this means in essence its water rights

---

[1]Shortage of water in Virginia City during several seasons is a matter of public record in the files of the office of the Public Service Commission, importuned by the citizens of that city to compel the Marlette Water Company to repair its flumes and make other necessary repairs and improvements to permit enough water to reach the consumers to afford sufficient water for domestic use.

[2]Marred though it is by the erection upon it of a state office building constructed along the lines of modern architecture.

and its watershed), such property may not be available in the future. A state government without an adequate seat of government cannot reasonably be envisioned.[3]

Petitioner's opening brief presents this issue: "The purpose of the contract between the State of Nevada and Marlette Lake Company is to transfer the Marlette Lake water system from the company to the state. The water system supplies water to the state-owned buildings in the Carson City area. No citation of authority is necessary to establish * * * that the purpose of the contract is to protect and preserve state property * * *." Nowhere do the respondents controvert this. In contending against petitioner's assertion that the bonds could be issued unaffected by the limitation of authorized state indebtednesses to 1 percent of the assessed valuation "for the protection and preservation of its natural resources * * *," respondents argued that the Marlette property was not a part of "its"—the state's—natural resources, and said: "This authority which the people gave to the legislature in 1934 to incur debts for the protection and preservation of its property [despite the 1 percent assessed value limitation] must be construed to have reference only to property owned by the state." The issue, then, thus stated by petitioner and conceded by respondents should dispose of the question presented to this court.

I would approve the contract and issue the writ of mandate under the constitutional provision authorizing the incurring of the indebtedness free of the limitation of the first paragraph of art. 9, § 3, and under the authority of the second paragraph of said section "for the protection and preservation of its [the state's] property" and under the legislative finding that it is "both expedient and advisable * * * for the purpose of obtaining and continuing the benefits thereof now

---

[3]The constitution requires the seat of government to be at Carson City, Nev. Const. art. 15, § 1.

and in future years for the state and its citizens." I do not think that the necessities growing out of the present petition and answer require a holding of such far-reaching implications as found in the majority opinion.