THE STATE OF NEVADA, EX REL. ROBERT LIST, ATTORNEY GENERAL OF THE STATE OF NEVADA, PETITIONER, v. THE COUNTY OF DOUGLAS, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, AND ROY GODECKE, HAROLD DAYTON AND CHARLES MENELEY, INDIVIDUALLY AND AS COUNTY COMMISSIONERS OF DOUGLAS COUNTY, RESPONDENTS.

No. 7683

July 22, 1974                                    524 P.2d 1271

*Robert List,* Attorney General, and *James H. Thompson,* Chief Deputy Attorney General, for Petitioner.

*Howard McKibben,* District Attorney, Douglas County, for Respondents.

## OPINION

By the Court, THOMPSON, C. J.:

This original proceeding, commenced by the Attorney General on behalf of the people of the State of Nevada, seeks a writ of mandate to compel Douglas County to pay its apportioned share of expenses to the Tahoe Regional Planning Agency in order that the Agency may be assisted in carrying out its purposes and activities.

The States of Nevada and California entered into the Tahoe Regional Planning Compact which the Congress of the United States has approved. 83 Stats. 360. The findings and declarations of policy are specified in Article I of the Compact (NRS 277.200) in the following words:

"(a) It is found and declared that the waters of Lake Tahoe and other resources of the Lake Tahoe region are threatened with deterioration or degeneration, which may endanger the natural beauty and economic productivity of the region.

"(b) It is further declared that by virtue of the special conditions and circumstances of the natural ecology, developmental pattern, population distribution and human needs in the Lake Tahoe region, the region is experiencing problems of resource use and deficiencies of environmental control.

"(c) It is further found and declared that there is a need to maintain an equilibrium between the region's natural endowment and its manmade environment, to preserve the scenic beauty and recreational opportunities of the region, and it is recognized that for the purpose of enhancing the efficiency and governmental effectiveness of the region, it is imperative that there be established an areawide planning agency with power to adopt and enforce a regional plan of resource conservation and orderly development, to exercise effective environmental controls and to perform other essential functions, as enumerated in this title."

As noted in paragraph (c) just quoted, it was, by the two states and Congress, deemed imperative to establish an areawide planning agency with the power to adopt and enforce a regional plan of resource conservation and orderly development, to exercise effective environmental controls and to perform other essential functions. Accordingly, the Compact established the Tahoe Regional Planning Agency, specified its

membership, delineated its powers, and provided a method by which the activities of the Agency were to be financed. See Articles III, IV, VI and VII of the Compact.

With regard to financing the activities of the Agency, the Compact provides that "on or before December 30 of each calendar year the Agency shall establish the amount of money necessary to support its activities for the next succeeding fiscal year commencing July 1 of the following year. The agency shall apportion not more than $150,000 of this amount among the counties within the region on the same ratio to the total sum required as the full cash valuation of taxable property within the region in each county bears to the total full cash valuation of taxable property within the region. Each county in California shall pay the sum allotted to it by the Agency from any funds available therefor and may levy a tax on any taxable property within its boundaries sufficient to pay the amount so allocated to it. Each county in Nevada shall pay such sum from its general fund or from any other moneys available therefor. . . . The Agency shall then allot such amount among the several counties . . . and each county shall pay such amount."

With respect to Douglas County, the amount apportioned to it by the Agency for the 1973–74 fiscal year is 15.55 percent of $150,000 or the sum of $23,325, of which amount the County has refused to pay $11,662.50. Hence, this proceeding to compel payment. The County challenges the constitutionality of the Compact on several grounds, thereby seeking to justify its refusal to contribute its proportionate share to the Agency. Before reaching the constitutional challenges, however, we first must resolve the County's attack upon the authority of the State through the Attorney General to bring this proceeding, and the propriety of mandamus.

1.    The Attorney General is a constitutional officer in the executive branch of our government and shall perform such duties as may be prescribed by law. Nev. Const. art. 5, § 19. The Constitution does not itself define those duties. Consequently, they are to be found only in legislative enactment. Ryan v. District Court, 88 Nev. 638, 642, 503 P.2d 842 (1972).

a.    The main contention of Douglas County is that the legislature has not granted authority to the Attorney General to commence a civil proceeding in the Supreme Court, but rather, has limited his authority to commence such a proceeding to the district and justice's courts. This contention rests upon the

wording of NRS 228.170.[1] Subsection 1 of the statute expressly grants authority to commence suit in "any court." That authority is not diminished or limited by the permissive language of subsection 2 mentioning the district and justice's courts. The highest legal officer of this state has access to and may invoke the original jurisdiction of the state's highest court.

b.  Subordinately, Douglas County argues that since the Tahoe Regional Planning Agency is, by the Compact, established as a separate legal entity (Art. III) with the power to bring an action in court (Art. VI(e)), that Agency, rather than the state, is the real party in interest.[2] Although the Agency itself may have instituted this proceeding, it does not follow that the state is without standing to do so. The interest of the state is manifest. It is a party to the interstate Compact with California and definitely concerned with making certain that its obligations thereunder are honored. As noted by the California Supreme Court, "the state, as a party to the interstate Compact, and as an entity which contributes funds to the Agency, has an important interest in securing the success of the Agency." People ex rel. Younger v. County of El Dorado, 487 P.2d 1193, 1199 (Cal. 1971).

Accordingly, we hold that the Attorney General, on behalf of the people of the State of Nevada, is authorized to institute this proceeding.

2.  The decision as to whether an application for a writ of mandate will be entertained lies within the discretion of the court.[3] Usually, this court prefers that such an application be

---

[1]NRS 228.170: 1. Whenever the governor shall direct, or, in the opinion of the attorney general, to protect and secure the interest of the state it is necessary that a suit be commenced or defended in any court, the attorney general shall commence such action or make such defense.

2. Such actions may be instituted in any district court in the state, or in any justice's court of the proper county.

As noted in Ryan v. District Court, supra, this section embraces only civil matters and does not bear upon criminal prosecutions. Id. at 641.

[2]NRCP 17(a): Every action shall be prosecuted in the name of the real party in interest. . . . .

NRS 34.170: The writ . . . shall be issued upon affidavit, on the application of the party beneficially interested.

[3]NRS 34.160: A writ *may* be issued by the Supreme Court. . . . (Underscoring added.)

NRAP 21(b): If the court is of the opinion that the writ should not be granted, it may deny the petition. . . .

addressed to the discretion of the appropriate district court, since that court also is invested with the power of mandamus. Nev. Const. art. 6, § 6; NRS 34.160. However, since the counties of Washoe, Carson City (Ormsby), and Douglas border the Nevada side of Lake Tahoe, and since the district courts serving those counties may possibly have different views about the issue here tendered, we chose to entertain this application rather than to direct its filing in a district court. Moreover, since this application concerns the integrity of the Tahoe Regional Planning Compact, a matter of grave public concern, we thought it wise to entertain it and avoid the delay which a different course would entail. And, of course, it is established that the mere existence of other possible remedies does not necessarily preclude mandamus. Armstrong v. State Bd. Examiners, 78 Nev. 495, 498, 376 P.2d 492 (1962).

One function of a writ of mandate is to compel the performance of an act which the law especially enjoins as a duty resulting from an office. NRS 34.160. The Compact provides that each county in Nevada "shall pay" the sum allotted to it by the Agency. Art. VII(a). No discretion is granted to the counties. Payment, therefore, is a duty enjoined by law and amenable to the remedy of mandamus.

3. Several challenges premised upon certain provisions of our Nevada Constitution are tendered. Additionally, the County contends that the Interstate Compact violates the Due Process and Equal Protection Clauses of the Federal Constitution. Finally, it is asserted that there is an unlawful delegation of legislative power to the Tahoe Regional Planning Agency.

The power of Nevada and California, with the consent of Congress, to enter into the Interstate Compact is not questioned. U.S. Const. art. 1, § 10. The Nevada legislative determination that it was expedient and advisable to so contract with California in order to preserve the integrity of the Lake Tahoe Basin as a natural resource was properly within its province to make. Marlette Lake Co. v. Sawyer, 79 Nev. 334, 338, 383 P.2d 369 (1963).

Since the Basin lies within two states, the concept of the Compact is regional in character. Its purpose is to protect and preserve the entire Basin for the benefit, use and enjoyment of present and future generations. This purpose is to be achieved through the auspices of the Tahoe Regional Planning Agency. That Agency is to "provide for the region as a whole the

planning, conservation and resource development essential to accommodate a growing population within the region's relatively small area without destroying the environment." People ex rel. Younger v. County of El Dorado, 487 P.2d 1193, 1196 (Cal. 1971).

Our Constitution explicitly recognizes the importance of protecting and preserving the natural resources of this state. Nev. Const. art. 9, § 3. The second paragraph of that article and section enables the legislature, without regard to the debt ceiling established by the first paragraph thereof, to enter into a Compact with another state for the purpose of protecting and preserving property or natural resources located within the Geographical limits of Nevada. Marlette Lake Co. v. Sawyer, 79 Nev. 334, 338, 383 P.2d 369 (1963).

The regional character of the Compact and the constitutional recognition of the need for legislative power to preserve and protect the natural resources of this state, provide the background for our evaluation of the several challenges to the Compact proffered by Douglas County.

a. Our state constitution declares, among other things, that the legislature shall not pass local or special laws for the regulation of county and township business, for the punishment of crimes and misdemeanors, or for the assessment and collection of taxes for state, county and township purposes. All such laws are to be general and of uniform application throughout the state. Nev. Const. art. 4, §§ 20, 21.

The Interstate Compact does empower the Tahoe Regional Planning Agency to enact ordinances concerning many matters including subdivision, zoning, waste disposal, air pollution, water purity, outdoor advertising, and the Compact does declare that a violation of any ordinance of the Agency is a misdemeanor. Moreover, the Nevada counties bordering Lake Tahoe are to pay apportioned shares to the Agency from their general funds. Consequently, Douglas County contends that the Compact necessarily violates the aforementioned constitutional prohibitions.

Essentially, the same contentions were presented to the California Supreme Court by the California county of El Dorado and were, by that court, flatly rejected. People ex rel. Younger v. County of El Dorado, 487 P.2d 1193 (Cal. 1971). That court repeatedly emphasized the fact that the Compact was enacted to achieve regional goals in conserving the natural resources of the entire Lake Tahoe Basin, rather than local goals and, therefore, did not offend substantially similar provisions of the California constitution.

The following statement of the California court in People ex rel. Younger v. County of El Dorado, supra, is especially apt: "The water that the Agency is to purify cannot be confined within one county or state; it circulates freely throughout Lake Tahoe. The air which the Agency must preserve from pollution knows no political boundaries. The wildlife which the Agency should protect ranges freely from one local jurisdiction to another. Nor can the population and explosive development which threatens the region be contained by any of the local authorities which govern parts of the Tahoe Basin. Only an agency transcending local boundaries can devise, adopt and put into operation solutions for the problems besetting the region as a whole. Indeed, the fact that the Compact is the product of the cooperative efforts and mutual agreement of two states is impressive proof that its subject matter and objectives are of regional rather than local concern." Id. at 1201.

We agree with the quoted statement, and hold that the preservation of the region of the Lake Tahoe Basin as a natural resource for the enjoyment of all people sets it apart from the embrace of the commands of art. 4, §§ 20 and 21 of our State Constitution. Were we to rule otherwise, every interstate compact proposing to protect and preserve a common natural resource through an agency empowered to enact laws would be a nullity. We are wholly unable to attribute such an intention to those who wrote the prohibitions of §§ 20 and 21 of art. 4.

b. Nev. Const. art. 19, § 4, reserves to the registered voters of each county and municipality the powers of initiative and referendum "as to all local, special and municipal legislation. . . ." As just noted, ordinances enacted by the Tahoe Regional Planning Agency are not local or special laws within the contemplation of art. 4, § 20. The same reasoning applies with equal force to deny the contention of Douglas County that the power of initiative and referendum with respect to local, special and municipal legislation is affected by the Compact.

c. The Fourteenth Amendment to the United States Constitution commands that no state shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. Although Douglas County contends that these prohibitions are violated by the Compact, it lacks standing to challenge Nevada on these grounds.

Douglas County, as a political subdivision of the State of Nevada, may not invoke the proscriptions of the Fourteenth Amendment in opposition to the will of its creator. Williams v. Baltimore, 289 U.S. 36 (1933); Trenton v. New Jersey, 262 U.S. 182 (1923). It may not complain of state action upon the ground that it has been deprived of its property without due process of law. The basic principles were summarized in the case of Hunter v. Pittsburgh, 207 U.S. 161 (1907):

"It would be unnecessary and unprofitable to analyze these decisions or quote from the opinions rendered. We think the following principles have been established by them and have become settled doctrines of this court, to be acted upon wherever they are applicable. Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may

by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it." Id. at 178–179.

Although the County's lack of standing to interpose Fourteenth Amendment challenges to state action is dispositive, we add a caveat with regard to the challenge premised upon the equal protection clause. It is asserted that equal protection is denied because the method of selecting the governing body of the Tahoe Regional Planning Agency violates the "one man, one vote" rule. The members of the governing board are appointed. The principle of "one man, one vote" has no relevancy to appointive boards. Sailors v. Board of Education, 387 U.S. 105 (1967); Hadley v. Junior College District, 397 U.S. 50, 58 (1970); People ex rel. Younger v. County of El Dorado, 487 P.2d 1193, 1208, 1209 (Cal. 1971).

d. The final attack upon the Compact is that the power therein granted to the Tahoe Regional Planning Agency is an unconstitutional delegation of legislative power for want of sufficient standards. The doctrine prohibiting delegations of legislative power is not offended if the legislature makes the fundamental policy decisions, and leaves to another body the task of achieving the legislative goals. People ex rel. Younger v. County of El Dorado, 487 P.2d 1193, 1210 (Cal. 1971); Urban Renewal Agcy. v. Iacometti, 79 Nev. 113, 127, 379 P.2d 466 (1963); McLaughlin v. L.V.H.A., 68 Nev. 84, 96, 227 P.2d 206 (1951).

The legislatures of Nevada and California, and the Congress of the United States have declared the policy and the goals to be achieved by the Compact in Article 1 thereof. Such goals are to be attained by the formulation of a regional plan (Article V(b)), powers are granted to effectuate such plan (Article VI), and the duty to carry it out is delegated to the Agency. This scheme is common and quite permissible. Urban Renewal Agency v. Iacometti, supra; McLaughlin v. L.V.H.A., supra.

We, therefore, conclude that the Tahoe Regional Planning

Compact is constitutional, and imposes a clear duty upon Douglas County to pay to the Tahoe Regional Planning Agency the sums allotted as the County's apportioned share of expenses. Accordingly, we order the issuance of a peremptory writ of mandate to compel such payment.

3. We also are requested to issue a writ of prohibition. The petitioner alleges that Douglas County is acting in excess of its jurisdiction by failing to obtain the approval of the Tahoe Regional Planning Agency prior to the construction of the proposed "Loop Road" in the Stateline area.

The Compact provides that "all public works projects shall be reviewed prior to construction and approved by the Agency as to the project's compliance with the adopted regional general plan." See Article VI(c). Douglas County denies having violated this requirement.

This dispute is not ripe for decision. The record before us shows only that the executive officer of the Agency "is informed" that Douglas County intends to proceed with construction of the Loop Road without first submitting that project to the Agency for its review and approval. We are confident that the County will comply with the Compact requirement. Consequently, we deny the request for prohibition.

4. The petition designates Roy Godecke, Harold Dayton and Charles Meneley, individually, and as County Commissioners of Douglas County, as respondents. We are asked to dismiss the petition against those just named in their individual capacities. The writ of mandate which we have ordered to issue is to compel the county commissioners to perform an act which the law especially enjoins as a duty resulting from an office, trust, or station. NRS 34.160. Clearly, the duty is imposed upon the commissioners acting in their official capacities, and not otherwise. Accordingly, the petition is dismissed against Godecke, Dayton and Meneley individually.

MOWBRAY, BATJER, and GUNDERSON, JJ., and GOLDMAN, D. J., concur.