BOARD OF COMMISSIONERS OF THE CITY OF LAS VEGAS, NEVADA, Appellants, v. DAYTON DEVELOPMENT COMPANY, a Minnesota Corporation, and THOMAS T. BEAM, Respondents.

No. 7741

January 29, 1975                     530 P.2d 1187

*Carl E. Lovell, Jr.,* City Attorney of Las Vegas, and *John P. Foley,* Special Counsel, of Las Vegas, for Appellant.

*Beckley, Singleton, DeLanoy & Jemison, Chartered,* of Las Vegas, for Respondent Dayton Development Company.

## OPINION

By the Court, THOMPSON, J.:

This appeal by the Board of Commissioners of the City of Las Vegas is from a judgment of the district court compelling, by a writ of mandamus, the reclassification of certain real

property to allow the proposed construction of a regional shopping center.[1]

The respondents, Dayton Development Company and Beam, filed an application with the City Planning Commission to reclassify certain property from residential and civic to commercial. The property comprises approximately 125 acres of unimproved land and is between Valley View Boulevard and Decatur Boulevard, and abuts on the south side of the Las Vegas Expressway. During the next several years, Dayton proposes to construct thereon a regional shopping center. The plan contemplates three or four major department stores, including a tire, battery and accessories facility and a gas station and garden center for each. Later on, Dayton envisions the construction of an office complex, a financial center, and garden-type townhouses or condominiums.

The Planning Commission, by a six to nothing vote, recommended approval of the application by the Board of City Commissioners, which is composed of five individuals. One of them, George Franklin, an attorney, disqualified himself since the relationship of attorney and client existed between him and Thomas Beam, one of the applicants seeking reclassification of the property. Indeed, Franklin had advised Beam with respect to certain of the provisions of the agreements between Beam and Dayton Development by which the latter was granted options to purchase the very property for which rezoning was sought. Consequently, only four commissioners voted upon the application for reclassification—two in favor of reclassification as recommended by the Planning Commission, and two against. In view of the tie vote, the application for reclassification lost. A majority of Commissioners qualified to vote must approve the application before it may be granted.

Dayton Development and Beam then sought court relief. They filed a proceeding in mandamus to compel reclassification of the property by the Board of City Commissioners, and persuaded the district court that such reclassification should occur. The Board then convened to consider whether to appeal from that judgment. A motion to appeal passed by a vote of three to two. Commissioner Franklin cast the deciding vote to appeal.

---

[1]Certain individual members of the Board also seek to appeal. Since the mandamus proceeding was against the City Commissioners acting in their official capacities, and not as individuals, and since the writ of mandamus was directed to the Board of City Commissioners as a Board and not to the individuals thereof as individuals, the individual appeals are dismissed. State ex rel. List v. County of Douglas, 90 Nev. 272, 524 P.2d 1271 (1974).

Before reaching the merits, we first must resolve a pending motion by the Respondent Dayton Development to dismiss this appeal.

1. Dayton contends that this appeal must be dismissed since it was not authorized by the Board, acting as such, through a majority of its members qualified to vote. This contention, of course, rests squarely on the proposition that Commissioner Franklin, who had disqualified himself with respect to the merits of the rezoning application, also was disqualified to vote on the motion to appeal since his conflict of interest continued to exist. The Board counters with the argument that Franklin's vote to appeal was not a vote for or against the zoning change, but simply was a vote to submit the district court's judgment to appellate review and should be counted for that purpose.

The Texas case of Hager v. State ex rel. TeVault, 446 S.W.2d 43 (Civ.App.Tex. 1969), appears to lend support to the respondent's contention. In that case, a city councilman, whose recall was demanded, was, by the appellate court, ruled disqualified to vote on the resolution which, by a three to two vote authorized the filing of a notice of appeal. The court reasoned that such councilman was directly and immediately affected by the litigation, and was precluded from voting, with the consequence that a majority of councilmen qualified to vote was not obtained, and the appeal was a nullity. The appellant has not tendered contra authority, nor have we found any directly on point.

To a degree, the posture of Commissioner Franklin in the case at hand is different than that of the Texas councilman. Franklin will not himself be directly and immediately affected by court review. His client, of course, will be. This difference aside, we are not persuaded to adopt the Texas view. It seems to us that a public office holder, disqualified to vote upon the merits of an issue, should not also be barred from casting his vote for appellate review. A proper resolution of the merits is in jeopardy if an office holder, who has a conflict of interest, is allowed to vote on the merits. Court review, however, is another matter. The court's resolution of the merits will not in any manner be affected by that office holder's vote favoring such review. Accordingly, we conclude that this appeal was authorized by the Board of City Commissioners, acting as such, through a majority of its members qualified to vote. The motion to dismiss is denied.

2.  As we turn to consider the merits it is worthwhile to state some established principles with respect to zoning generally, and with regard to the availability of mandamus particularly.

Zoning is a legislative matter and the legislature has acted. Eagle Thrifty v. Hunter Lake P.T.A., 85 Nev. 162, 451 P.2d 713 (1969). It has authorized the "governing body" to provide for zoning districts and to establish the administrative machinery to amend, supplement and change zoning districts. NRS 278.260. As a general proposition, the zoning power should not be subjected to judicial interference unless clearly necessary. Coronet Homes, Inc. v. McKenzie, 84 Nev. 250, 439 P.2d 219 (1968).

The extraordinary remedy of mandamus is available to compel the performance of an act which the law especially enjoins as a duty resulting from office. State ex rel. List v. County of Douglas, 90 Nev. 272, 524 P.2d 1271 (1974); Armstrong v. State Bd. of Examiners, 78 Nev. 495, 376 P.2d 492 (1962). That writ also is available to correct a manifest abuse of discretion by the governing body, and occasionally has been so utilized in zoning cases. State ex rel. Johns v. Gragson, 89 Nev. 478, 515 P.2d 65 (1973); Henderson v. Henderson Auto, 77 Nev. 118, 359 P.2d 743 (1961).

With regard to the remedy of mandamus, the case at hand presents an entirely new problem. It is apparent that the Board of City Commissioners was not under a duty to grant the requested zoning change since the application therefor was addressed to the sound discretion of the Board. We think it to be equally clear that the Board, in an attempt to exercise its discretion and resolve the issue before it, was unable to do so because of the tie vote. As we see it, the exercise of discretion contemplates a decision. Here, none was made. The applicants lost simply because a majority vote was not secured. They did not lose because a majority, qualified to vote, exercised a discretionary judgment against them. The Commissioners divided equally in attempting to resolve the merits. Thus, a determination by the Board, for or against the application, was not made. Consequently, we are wholly unable in this case, to review the record before the Board and ascertain whether its decision was arbitrary and capricious, since the Board was unable to reach a

decision. Neither was the district court in a position to make that determination. Cf. State ex rel. Johns v. Gragson, supra, and Henderson v. Henderson Auto, supra.

In this highly unsual context, we believe that it is appropriate to extend the scope of mandamus in order to allow court review and decision. Any other view would permit the possible loss of valuable rights by reason of the Board's failure to decide the issue. We are not willing to countenance such a result.

Having decided that it was permissible for the district court to entertain mandamus in this unusual context, it inevitably follows that the court also was empowered to decide the issue placed before it without deference to the action of the Board of City Commissioners who had been unable to resolve the matter. This court, in turn, will resolve this appeal by examining the record to ascertain whether the lower court determination is supported by the evidence.[2]

3. The district court, after reviewing all data submitted to the Planning Commission and subsequently to the Board of City Commissioners, concluded that the requested rezoning should occur. Several factors apparently led the court to so rule. It noted that the City of Las Vegas had employed Desert Research Associates to conduct a feasibility study regarding the regional shopping potential for the Las Vegas metropolitan area. That study, in detailed form, found the optimal location for such a center to be in the northwest area of the City as near as possible to the intersection of the Interstate 15 Freeway and the Las Vegas Expressway. The letter transmitting that report noted a preference for direct freeway access. The property in issue appeared to suit the findings of the feasibility study.

With regard to street access to the proposed center, Dayton Development represented that it would donate the land necessary for the Expressway-Valley View interchange when requested and would participate significantly in the cost thereof. Other experts noted that expected traffic would not pose a serious problem.

People residing in the general area overwhelmingly favored the application for reclassification. Moreover, the Planning Commission in whom is vested the obligation to study such

[2]Had the Board of City Commissioners decided the issue, our function would be to review its decision in the light of the standards declared in State ex rel. Johns v. Gragson, supra, and Henderson v. Henderson Auto, supra.

applications and to recommend action thereon, had concluded by a vote of six to nothing that the Board of City Commissioners should approve the rezoning sought by Dayton Development and Beam.

The factors just mentioned possess substance and force, and provide ample support for the judgment that a writ of mandamus issue. The judgment, however, is overly broad.

When a rezoning application is approved, certain conditions customarily are imposed. In the present instance, the Planning Commission recommended rezoning upon compliance with the conditions footnoted below.[3] The record shows that Dayton Development does not object to those conditions, except that the time within which construction on Phase I of the project must commence should begin to run from the date that ecology approval is secured from appropriate authorities. We, therefore, modify the judgment entered below to include the conditions specified by the Planning Commission, except that the time

[3]1.  Resolution of Intent shall be in effect until December 1975, at which time the resolution of intent shall expire unless construction of Phase I, including a minimum of two major department stores, has commenced.

2.  Conformance to the plot plan.

3.  All development proposed on the future development site as shown on the plot plan shall be approved by the Planning Commission prior to construction.

4.  If the property owner to the south is willing to dedicate the additional right of way needed to extend Bedford Road and Revere Drive north to the south line of the shopping center property, the developer shall provide a loop street connecting the north end of Bedford Road and Revere Drive either along the south line of the shopping center property or by acquiring property immediately south of the south line.

5.  The location of Michael Way on the east of Decatur Blvd. shall be in accordance with the requirements of the Public Works Department.

6.  Landscaping shall be installed along Decatur Blvd. and Valley View Blvd. and along the south portion of the development with the first phase of construction as required by the Planning Department.

7.  Dedication of necessary rights of way and signing an agreement and posting a bond for the installation of off-site impovements as required by the Department of Public Works. The commercial zoning shall be applicable only to that portion of the property indicated for immediate and future development and shall exclude that portion of the property indicated for future freeway right of way purposes.

8.  Conformance to the requirements of the Fire and Building Departments.

9.  Landscaping shall be provided as required by the Planning Commission and shall be permanently maintained in a satisfactory manner. Failure to properly maintain required landscaping shall be cause for revocation of a business license.

within which Phase I of the Project is to commence shall begin to run from the date that ecology approval is secured.
Affirmed, as modified.

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.