WILLIAM W. MORRIS, as Taxpayer and Citizen of the State of Nevada, Appellant and Cross-Respondent, v. BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA; ROBERT A. CASHELL, as Chairman of the Board of Regents; DONALD H. BAEPLER, as Chancellor and Ex-officio Treasurer of the University of Nevada; KENNETH W. PARTRIDGE, as Vice Chancellor for Finance of the University of Nevada; BONNIE M. SMOTONY, as Secretary of the Board of Regents; STANTON B. COLTON, as Treasurer of the State of Nevada; and WILSON McGOWAN, as Controller of the State of Nevada, Respondents and Cross-Appellants.

No. 12612

March 19, 1981                                   625 P.2d 562

*Morris & Wood,* Las Vegas, for Appellant and Cross-Respondent.

*Richard H. Bryan,* Attorney General, Carson City; *Larry D. Lessly,* Reno, and *Dawson, Nagel, Sherman & Howard,* Denver, Colorado, for Respondents and Cross-Appellants.

## OPINION

*Per Curiam:*

Appellant Morris challenges the legality of issuance of certain bonds by the University of Nevada, authorized by the legislature. The district court held that issuance of part of the bonds authorized (referred to as the 1979(2) bonds) was unconstitutional insofar as they were funded by the proceeds of the slot machine tax under the debt limitation of the Nevada constitution.[1] Respondents have cross-appealed from this part of the judgment. Morris, the taxpayer who sued to enjoin issuance of the bonds, appeals from the part of the judgment in which the district court held that issuance of some of the bonds (the 1979(1) bonds) was not unconstitutional insofar as they were funded from University student fees and from user fees.

---

[1] Nev. Const. art. 9 § 3 provides:

Limitations and exceptions.   The state may contract public debts; but such debts shall never, in the aggregate, exclusive of interest, exceed the sum of one per cent of the assessed valuation of the state, as shown by the reports of the county assessors to the state controller, except for the purpose of defraying extraordinary expenses, as hereinafter mentioned. Every such debt shall be authorized by law for some purpose or purposes, to be distinctly specified therein; and every such law shall provide for levying an annual tax sufficient to pay the interest semiannually, and the principal within twenty years from the passage of such law, and shall specially appropriate the proceeds of said taxes to the payment of said principal and

The 1977 Nevada legislature authorized the University of Nevada to undertake certain construction projects on its campuses and to issue bonds for the projects funded by student and user fees. 1977 Nev. Stats. ch. 378. The 1979 legislature provided for the funding of University construction bonds from various sources, 1979 Nev. Stats. ch. 264, codified at NRS 396.8395, including the revenues from the tax on slot machines, 1979 Nev. Stats. ch. 679. The University, pursuant to this legislation, has authorized issuance of bonds in the principal amount of $58,000,000. Appellant Morris contends that the bond issue will constitute a debt within the meaning of Nev. Const. art. 9 § 3, and that the issuance would exceed the available debt incurring capacity of the state and would therefore be void *ab initio* under Nev. Const. art. 9 § 3. The district court found that issuance of the bonds would exceed the debt limitation. We are constrained to agree, to the extent that the bonds are funded by revenues from the slot machine tax, they constitute a debt within the meaning of the constitutional provision. We also agree with the district court that to the extent that student and user fees are the fund for any part of the bonds, no debt within the meaning of the Constitution is created, as the "special fund" doctrine applies. Accordingly, we affirm the judgment of the district court in all respects.

The constitutional debt limitation prevents the state government from incurring debts in an aggregate amount greater than one percent of the assessed value of the state. Nev. Const. art. 9 § 3. The definition of debts subject to the limitation does not include obligations for which the revenues of the state are not

interest; and such appropriation shall not be repealed nor the taxes postponed or diminshed until the principal and interest of said debts shall have been wholly paid. Every contract of indebtedness entered into or assumed by or on behalf of the state, when all its debts and liabilities amount to said sum before mentioned, shall be void and of no effect, except in cases of money borrowed to repel invasion, suppress insurrection, defend the state in time of war, or, if hostilities be threatened, provide for the public defense.

The state, notwithstanding the foregoing limitations, may, pursuant to authority of the legislature, make and enter into any and all contracts necessary, expedient or advisable for the protection and preservation of any of its property or natural resources, or for the purposes of obtaining the benefits thereof, however arising and whether arising by or through any undertaking or project of the United States or by or through any treaty or compact between the states, or otherwise. The legislature may from time to time make such appropriations as may be necessary to carry out the obligations of the state under such contracts, and shall levy such tax as may be necessary to pay the same or carry them into effect.

pledged, but for whose payment a "special fund" is created from fees charged to users of the facility funded or from other sources not having their origin in general state taxation. *See* Secretary of Transportation v. Mancuso, 359 A.2d 79 (Md. 1976); State v. Martin, 384 P.2d 833 (Wash. 1963); Conder v. University of Utah, 257 P.2d 367 (Utah 1953); *see also* Ronnow v. City of Las Vegas, 57 Nev. 332, 65 P.2d 133 (1937). In this context, whether the state taxation which funds a bond issue is an *ad valorem* or an excise tax is immaterial to the determination whether the bonds are a debt within the constitutional limitation: in either case, state tax revenue is being used to finance a debt which does not have a "special fund" to support it entirely. *See* State v. Martin, *supra* at 842; People v. Barrett, 26 N.E.2d 478 (Ill. 1940).

Should the revenue from the slot machine tax ever be insufficient to repay the bond obligations, the general credit of the state is pledged for their repayment. The statute binds subsequent legislatures to continue the tax at its present level at least, *until the obligations created by the bonds are paid.* 1979 Nev. Stats. ch. 679 § 3; NRS 396.844. Thus the tax revenues of the state are liable for the repayment of these obligations, *see* State ex rel. Nev. Bldg. Auth. v. Hancock, 86 Nev. 310, 468 P.2d 333 (1970); McLaughlin v. L.V.H.A., 68 Nev. 84, 227 P.2d 206 (1951), and the obligation is a debt within the meaning of the constitutional provision. *See* Ronnow v. City of Las Vegas, *supra,* at 358-59, 65 P.2d at 143. Were we to accept the proposition that a pledge of any specific tax revenues would be sufficient to invoke the "special fund" doctrine, the constitutional debt limitation would be largely nullified, since the legislature could exempt almost any obligation from its strictures merely by identifying a specific tax from which the obligation could be paid.[2]

We are not persuaded by respondents' argument that the bonds are an indebtedness exempt from the limitation under Nev. Const. art. 9 § 3 ¶ 2. The project in question here is not necessary, expedient or advisable for any of the purposes enumerated in the constitutional provision. *Cf.* Marlette Lake Co. v. Sawyer, 79 Nev. 334, 383 P.2d 369 (1963) (expenditure to furnish water to seat of state government).

---

[2]Arguments that such constitutional debt limitations are an inefficient way to curb excessive government indebtedness, and that the typically low limitation is unrealistic, *e.g.,* Bowmar, *The Anachronism Called Debt Limitation,* 52 Iowa L.Rev. 863 (1967), must be addressed to the legislature and the people of the state, as this Court is bound by the constitutional provision.

As to any part of the bond issue which is funded by student and user fees, however, the "special fund" doctrine is applicable to the extent that funds are supplied exclusively from those sources. *See* State ex rel. Nev. Bldg. Auth. v. Hancock, *supra;* Ronnow v. City of Las Vegas, *supra;* State v. New Mexico State Authority, 411 P.2d 984 (N.M. 1966). The district court was therefore correct in holding that, under the severability clause of the enactment in question, 1979 Nev. Stats. ch. 679 § 16, the invalidity of the bonds funded from the slot machine tax does not affect the validity of the fund created from student and user fees.

The judgment of the district court is affirmed.