THE CITY OF RENO, Appellant, v. NEVADA FIRST THRIFT, Respondent.

No. 15159

August 24, 1984                          686 P.2d 231

[Rehearing denied December 24, 1984]

*Robert L. Van Wagoner,* City Attorney, Reno, for Appellant.

*C. Nicholas Pereos, Lance VanLydegraf,* and *Paul C. Giese,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order granting a writ of mandamus requiring appellant City of Reno (City) to issue a business

license and certificate of occupancy for the Buena Vista Apartments (Buena Vista) owned by respondent Nevada First Thrift (NFT). For the reasons set forth hereinafter, the order granting the writ is affirmed.

Buena Vista is a common kitchen complex consisting of thirty-two bedrooms and eight kitchens. Each kitchen serves four bedrooms. The apartments are situated on a lot of approximately 11,000 square feet; zoning is R-3, requiring 1,000 square feet per dwelling unit.

Vari-build, the original owner and developer of the Buena Vista project, submitted construction plans to the City. The City approved the project and Vari-build received a building permit on Februay 17, 1981. One month later, NFT closed a construction loan with Vari-build to finance the project.

After two months of construction, a neighbor near the project complained to the City that Buena Vista constituted a violation of the zoning laws. The assistant City attorney responded with a memo to the mayor, City council and City manager concluding that the project "complies with all applicable zoning code requirements." Regarding dwelling unit density, he also opined, citing Reno Municipal Code § 16.12.030(b)(15) and (16), that the project "complies with the definition of living unit," because "[i]n this type of project one counts the number of kitchens, not the number of bedrooms, to determine dwelling units."[1] He further indicated that the City's ordinances regarding common kitchens units in "major projects" were inapplicable to Buena Vista because it contained only thirty-two bedrooms—less than half the number required for "major project" status.[2] City enacted new ordinances in 1982 numbering common kitchen dwelling units based on the sum of the bedrooms.

---

[1]R.M.C. § 16.12.030(b) allowed common kitchens to be shared by four persons living as a single housekeeping unit:

"(15) 'Dwelling' means:

. . . .

"(E) Living unit—a building or portion thereof containing one kitchen designed and/or used to house not more than one family, including necessary employees of such family.

"(16) 'Family' means one person living alone, or two or more persons related by blood, marriage, or legal adoption, or group not exceeding four persons living as a single housekeeping unit."

[2]R.M.C. § 16.12.050 provided in part that each bedroom in a common kitchen 'major project' constitutes a dwelling unit:

"(h) Major Projects Categories Requiring Special Use Permits.

"(1) Definition. A "major project" means any proposed development which falls within any one or more of the following categories:

"(A) Multiple dwellings (apartments, condominiums, etc.) or transient occupancy facilities (hotels, motels, apartment hotels,

Three months after project commencement, the apartments were eighty-five percent completed. At that time, neighbors instituted administrative proceedings which halted construction. Vari-build obtained an injunction against the City to remove the stopwork order. Soon thereafter the apartments were completed.

The City's Board of Adjustment determined at a subsequent public hearing that common kitchen density would no longer be determined by the number of kitchens, but by the number of bedrooms. One week later, the City issued Vari-build a certificate of occupancy for Buena Vista. Vari-build thereupon applied for a business license for the apartments. Shortly thereafter, the City council affirmed the Board of Adjustment's interpretation dealing with common kitchen apartments and denied Vari-build's application for a business license.

After exhausting administrative remedies without success, Vari-build filed suit in district court and sought an order compelling issuance of a business license based on the doctrine of estoppel. The district court agreed that an estoppel would be appropriate if relief were to be accorded solely on the common kitchen issue, but then concluded that equitable relief was not available because the builder had unclean hands with respect to certain building code violations. Judge Breen determined that, despite approval of the building code violations by City authorities either on the original plans or after construction, the violations in light of the builder's lengthy experience had sufficiently soiled his hands to warrant a denial of equity.

Because Vari-build was unable to rent the Buena Vista Apartments, it had no income to cover debt service and therefore defaulted on its loan agreement with NFT. NFT foreclosed on the project and commenced this action seeking a writ of mandamus.[3]

After a show cause hearing before the district court, Judge Bowen granted the writ of mandamus ordering the City to issue a business license and certificate of occupancy to NFT for the Buena Vista Apartments. Having complied with the writ, the City now appeals the order.

---

vacation time sharing projects, etc.) containing eighty units or more, or phased developments, additions or expansions which would result in a cumulative total of eighty units in the development. *In any development utilizing common kitchens, each bedroom shall be considered as one unit. . . .*"

[3]NFT also applied unsuccessfully for a business license. The City denied NFT the license because the project violated zoning density provisions. NFT did not appeal the denial of the license by the City since it had been told that the City would never issue a business license for Buena Vista's use as common kitchen apartments.

City's first contention is that it does not owe NFT any duty which could provide a basis for a claim for relief. City maintains that even if it acted negligently in enforcing and interpreting the zoning and building codes, any such negligence would not be actionable by NFT since any duty of care relating thereto exists only as to the public in general and not to any individual party seeking relief based on estoppel. We disagree. It would be an abuse of discretion in the instant case and contrary to principles of equitable estoppel and the vested rights doctrine if the City were allowed to retroactively enforce reinterpreted zoning laws or to assert previously waived building code infractions after funds had been loaned and construction nearly completed. We hold that when a building permit has been issued, vested rights against changes in zoning laws exist after the permittee has incurred considerable expense in reliance thereupon.[4] See Town of Paradise Valley v. Gulf Leisure Corporation, 557 P.2d 532, 540 (Ariz.App. 1976); *see also* annot. 89 A.L.R.3d 1051 (1979). As was the court in *Town of Paradise Valley,* we are persuaded by the position succinctly summarized in Deer Park Civic Association v. City of Chicago, 106 N.E.2d 823, 825 (Ill.App. 1952):

> The general rule is that any substantial change of position, expenditures, or incurrence of obligations under a building permit entitles the permittee to complete the construction and use the premises for the purpose authorized irrespective of subsequent zoning or changes in zoning. 8 McQuillin Municipal Corporations, 272 (3rd ed.).

It would also offend sound public policy if cities were allowed to retroactively apply modified building rules and zoning changes so late in the life of a project. Construction lenders would have small assurance, indeed, in the credit worthiness of Nevada projects approved by governmental authority.

We have previously held, moreover, that such abuse is properly corrected by a writ of mandamus.

> The extraordinary remedy of mandamus is available to compel the performance of an act which the law especially

[4]This is not a case where the building permit was initially *denied* and the appellant had actual or constructive knowledge of zoning changes which were pending or had been legislatively mandated *before* appellant acquired a property interest in the project in question. *Cf.* Kings Castle Limited Partnership v. Washoe County Board of County Commisioners, 88 Nev. 557, 502 P.2d 103 (1972); Williams v. Griffin, 91 Nev. 743, 542 P.2d 732 (1975).

enjoins as a duty resulting from office. State ex rel. List v. County of Douglas, 90 Nev. 272, 524 P.2d 1271 (1974); Armstrong v. State Bd. of Examiners, 78 Nev. 495, 376 P.2d 492 (1962). That writ also is available to correct a manifest abuse of discretion by the governing body, and occasionally has been so utilized in zoning cases. State ex rel. Johns v. Gragson, 89 Nev. 478, 515 P.2d 65 (1973); Henderson v. Henderson Auto, 77 Nev. 118, 359 P.2d 743 (1961).

Board of County Commissioners v. Dayton Development Company, 91 Nev. 71, 75, 530 P.2d 1187, 1189 (1975). The remedy employed by the district court, therefore, was correct and legally sound.

City's second contention is that the district court exceeded its jurisdiction and acted as a "super board of adjustment" when it issued the writ of mandamus. While we have said that courts are not super boards of adjustment, we have nevertheless recognized that they can properly act as judicial overseers, "drawing the limits beyond which local regulation may not go." Coronet Homes, Inc. v. McKenzie, 84 Nev. 250, 256, 439 P.2d 219, 223 (1968). More importantly, we have held that "where the decision of an administrative body is arbitary, oppressive, or accompanied by manifest abuse, this court will not hesitate to interfere." State *ex rel.* Johns v. Gragson, 89 Nev. 478, 483, 515 P.2d 65, 68 (1973). The district court here properly acted to check such arbitrary and capricious conduct by the City.

Finally, City contends that Judge Breen's denial of Varibuild's petition for a writ of mandamus should have barred Judge Bowen's order granting the same relief by reason of res judicata or collateral estoppel. In order for res judicata or collateral estoppel to be applied here, each of three questions must be answered affirmatively: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Paradise Palms Community Association v. Paradise Homes, 89 Nev. 27, 31, 505 P.2d 596, 599 (1973), *cert. denied,* 414 U.S. 865 (1973). Because our review of Judge Breen's prior opinion convinces us that it was not a final judgment on the merits, we conclude, without analyzing the other two elements, that Judge Bowen's subsequent order was not barred by res judicata or collateral estoppel.

In his opinion, Judge Breen clearly recognized that the City knowingly approved the building code violations and acted unfairly by attempting to retroactively enforce the new interpretation of common kitchen density. Judge Breen nevertheless decided that a builder with twenty years of experience should have adhered to the building code despite City's approval of the violations and, therefore, should not receive equitable relief. We, of course, have no occasion to pass on the propriety of that ruling. Judge Breen's decision was influenced more by Vari-build's unclean hands than the merits of the case. The primary issues relating to the merits of the case were not adjudicated by reason of the builder's unclean hands. The prior adjudication was not a final judgment on the merits. We have considered the City's other contentions and have concluded that they likewise cannot be sustained.

For the reasons stated above, we have determined that the City's appeal of the district court's order granting a writ of mandamus is without merit. Accordingly, the order is affirmed.